UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21064-CIV-ZLOCH

LABRANT D. DENNIS,

     Petitioner,

vs.                                          **O R D E R**

MICHAEL D. CREWS, Secretary,
Florida Department of Corrections

     Respondent.
_____/

     THIS MATTER is before the Court upon Petitioner Labrant D. Dennis's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254 (DE 1).  Petitioner, Labrant Dennis ("Mr. Dennis"), is on death row at Union Correctional Institution in Raiford, Florida, following convictions in 1998 for the first degree murders of Marlin Barnes and Timwanika Lumpkins.  The instant Petition For Writ Of Habeas Corpus (DE 1) was filed March 26, 2013.  On June 26, 2013, the State filed its Response To Order To Show Cause Why Petition For Writ Of Habeas Corpus Should Not Be Granted (DE 10).  Mr. Dennis filed his Reply (DE 15) on September 9, 2013.

     The Court has carefully reviewed said Petition (DE 1), the entire court file and is otherwise fully advised in premises.  For the reasons that follow, the Petition for Writ of Habeas Corpus (DE 1) will be **DENIED**.

## I. FACTUAL BACKGROUND

     The Supreme Court of Florida gave the following summary of the pertinent and salient facts:

On the morning of April 13, 1996, University of Miami football player Earl Little arrived at his on-campus apartment to pick up the keys to his truck, a black Ford Explorer, he had loaned to his roommate and teammate, Marlin Barnes. Little loaned Barnes the truck the previous evening to attend a party at Club Salvation in Miami Beach and advised him that he would return to the apartment early the next morning to retrieve his vehicle. Little, who spent the night at another on-campus apartment, arrived at the apartment complex between 7 and 7:30 a.m. As he approached his third-floor apartment he noticed that his truck, which was parked outside the apartment, was tilting towards its right side. Little examined his truck and observed a puncture mark in his right rear tire. He then went upstairs to his apartment.

When Little attempted to open the door to his apartment he discovered that it was unlocked, but when he tried to push the door open he experienced resistance. Finally, after several attempts the door gave way enough for him to peer inside the apartment where he discovered Barnes' body lying against the front door. Little called Barnes' name and Barnes drew only a heavy breath in response. Upon calling his name a second time, Barnes turned his head and Little saw for the first time that Barnes' face was badly beaten and bloodied. Little raced to a nearby apartment and called police.

Dan Oppert of the Coral Gables Police Department arrived on the scene at 7:34 a.m. Upon entering the apartment Oppert observed Barnes lying on the floor with his head leaning against the front door. As Oppert proceeded through the apartment to secure the premises he discovered the body of Timwanika Lumpkins in a bedroom. Lumpkins was lying face down and had severe trauma to the back of her head. As he continued his search of the apartment he observed that the back door was dead-bolted. When Oppert returned to the living room he watched Barnes make an attempt to get up and then collapse.

Wayne Sibley of the Coral Gables Fire Rescue arrived at the scene at 7:39 a.m. and Barnes was no longer breathing. Sibley and other emergency personnel quickly attended to Lumpkins who was still breathing. Barnes was pronounced dead at the scene and Lumpkins was pronounced dead after being airlifted to a nearby hospital.

Dennis v. State, 817 So.2d 741 (2002).

2

## II. **PROCEDURAL BACKGROUND**

On October 27, 1998, Mr. Dennis was convicted of two counts of first degree murder, one count of burglary with assault or battery while armed, and one count of criminal mischief. <u>Dennis</u>, 817 So.2d at 751. The jury recommended the death penalty by a vote of eleven to one. <u>Id.</u> The presiding judge adopted the jury's recommendation finding four aggravating circumstances[1] and, while the court considered seven statutory and non-statutory mitigating factors, it only assigned weight to three.[2]

On direct appeal to the Florida Supreme Court, Mr. Dennis

---

[1] (1) that the defendant had been convicted of a prior capital felony (the contemporaneous murder); (2) that the murder was committed in the course of a felony (burglary); (3) that the murder was especially heinous, atrocious, or cruel (HAC); and (4) that the murder was committed in a cold, calculated, and premeditated manner without any pretense of legal or moral justification (CCP).

[2] (1) that the defendant did not have a significant history of prior criminal activity (not found and therefore given no weight); (2) that the defendant was under the influence of extreme mental or emotional disturbance (given little weight); (3) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired (given no weight); (4) a catchall category of mitigation—the defendant's kindness to others and love and affection towards his family (given some weight); (5) that defendant's demeanor at trial was good (given some weight); (6) the length of sentence defendant could receive if not sentenced to death (found not to be mitigating and therefore given no weight); and (7) lingering or residual doubt as to defendant's guilt (found not to be mitigating and therefore given no weight)

raised thirteen claims.[3] <u>Dennis v. State</u>, 109 So.3d 680 (Fla. 2012). The Florida Supreme Court affirmed the convictions and sentence.

In November 2003, Mr. Dennis filed a motion for postconviction relief. On October 7, 2004, the trial judge entered an order denying all of Mr. Dennis's claims. However, this order did not include the reason for the denial or any findings of fact. On November 15, 2004, the trial court issued an amended order. The amended order still did not include findings of fact for all of Mr. Dennis's claims. On appeal, the Florida Supreme Court remanded the case to the trial court for a new proceeding on Mr. Dennis's postconviction motion and dismissed his habeas petition without prejudice. <u>Dennis v. State</u>, 999 So.2d 644 (Fla. 2008).

Upon remand, the circuit judge allowed Mr. Dennis to file an

---

[3] (1) the trial court failed to provide the jury with a cautionary instruction on accomplices; (2) the State improperly bolstered the credibility of several of its witnesses; (3) the State improperly impeached its own witness, Watisha Wallace; (4) the trial court erred in denying a motion to suppress the identification of the car; (5) the trial court erred in allowing the State to impeach its own witness, Jessie Pitts; (6) the trial court erred in admitting collateral evidence that Dennis stalked, threatened, and assaulted Lumpkins; (7) the trial court erred in allowing the State to introduce evidence that Dennis had a jealous character; (8) the trial court erred in admitting several autopsy photographs; (9) the sentencing order provided an inadequate basis for review in that it contained several factual inaccuracies; (10) the trial court erred in finding the CCP aggravator; (11) the trial court erred in finding the HAC aggravator; (12) the trial court erred in giving little or no weight to the extreme mental or emotional disturbance mitigator; and (13) the death sentence is not proportionate because this was a crime of passion.

amendment to his postconviction motion, an amendment which included two new claims. A Huff hearing[4] was held on May 11, 2009.  On June 12, 2009, without holding an evidentiary hearing, the trial court entered an order denying postconviction relief.

On appeal, the Florida Supreme Court again remanded the case for the trial court to hold an evidentiary hearing on two claims. Specifically, the court ordered the trial court to conduct an evidentiary hearing on Mr. Dennis's claims that:  (1) counsel was ineffective for failing to investigate and present further mitigation evidence at the penalty phase; and (2) the State violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the assistant state attorney's memo to Dr. Rao, the medical examiner who testified during the penalty phase.  After holding an evidentiary hearing, the trial court denied these claims.

Mr. Dennis appealed to the Florida Supreme Court and petitioned for a writ of habeas corpus. Mr. Dennis asserted ten claims for postconviction relief[5] and four claims for state habeas

---

[4] Huff v. State, 622 So.2d 982, 983 (Fla. 1993) (requiring a hearing upon the filing of a postconviction motion and answer to determine whether an evidentiary hearing is needed and to hear argument on legal issues).

[5] (1) ineffective assistance during the guilt phase; (2) ineffective assistance during the penalty phase; (3) Brady claim; (4) alleged conflict of interest; (5) improper comments and improper examination of witnesses; (6) Florida bar rules for interviewing jurors; and (7) error in denying public records requests; (8)newly discovered evidence; (9) Florida's lethal

relief.[6]   The Florida Supreme Court affirmed the denial of Mr. Dennis's postconviction motion and denied habeas relief. Dennis, 109 So.3d at 704. Rehearing was denied on March 8, 2013.

On March 26, 2013, Mr. Dennis filed his federal Petition (DE 1) for a writ of habeas corpus asserting six claims.  This matter is now ripe. The State has not argued that the Petition was untimely. The Court will review the merit of his claims.

### III. <u>STANDARD OF REVIEW</u>

Mr. Dennis's habeas corpus Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214 (1996) (codified at various provisions in Title 28 of the U.S. Code), which significantly changed the standards of review that federal courts apply in habeas corpus proceedings.  Under the AEDPA, if a claim was adjudicated on the merits in state court, habeas corpus relief can only be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an

---

injection statute and procedure is unconstitutional; and (10) insufficient evidence

[6] Ineffective assistance of appellate counsel for failing to:(1)raise claims regarding improper testimony; (2) raise claims regarding juror interactions and judicial bias; (3)argue error in admission of Dr. Rao's testimony; and (4)raise Mr. Dennis's absence from pretrial hearings.

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2)(2014). This is an "exacting standard." Maharaj v. Sec'y, Dept. of Corr., 432 F.3d 1292, 1308 (11th Cir. 2005).

Pursuant to § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an] [opposite] result." Williams v. Taylor, 529 U.S. 362, 405 (2000) (opinion of O'Connor, J., for a majority of the Court). In other words, the "contrary to" prong means that "the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." Id.

With respect to the "unreasonable application" prong of § 2254(d)(1), which applies when a state court identifies the correct legal principle but purportedly applies it incorrectly to the facts before it, a federal habeas court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). Significantly, an "objectively unreasonable application of federal law is different from an incorrect application of federal law." Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). An "unreasonable application" can also

7

occur if a state court "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).

As noted above, § 2254(d)(2) provides an alternative avenue for relief. Habeas relief may be granted if the state court's determination of the facts was unreasonable. "A state court's determination of the facts, however, is entitled to deference" under § 2254(e)(1). See Maharaj, 432 F.3d at 1309. This means that a federal habeas court must presume that findings of fact by a state court are correct, and a habeas petitioner must rebut that presumption by clear and convincing evidence. See Hunter v. Sec'y, Dept. of Corr., 395 F.3d 1196, 1200 (11th Cir. 2005).

Finally, where a federal court would "deny relief under a de novo review standard, relief must be denied under the much narrower AEDPA standard." Jefferson v. Fountain, 382 F.3d 1286, 1295 n.5 (11th Cir. 2004). Even if the Court believed the Florida Supreme Court's determination to be an incorrect one, under AEDPA deference that alone is not enough to grant habeas relief, the Court must also find that "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." Harrison v. Richter, 562 U.S. 86, 102 (2011). In other words, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

8

the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. See id.

## IV. ANALYSIS

Mr. Dennis asserts six claims for federal habeas relief. First, he contends that his penalty phase counsel was ineffective. Second, Mr. Dennis argues that the State withheld evidence in violation of his rights as established in Brady v. Maryland. Third, Mr. Dennis asserts that the trial court erred in denying a motion to exclude witness testimony regarding the car seen at the time of the murders because the police investigation was unduly suggestive. Fourth, he contends that his due process rights were violated by trial court error which cumulatively amounted to constitutional error.  Fifth, Mr. Dennis argues that he was denied the effective assistance of counsel during the guilt phase of his trial. Finally, Mr. Dennis asserts a claim for ineffective assistance of appellate counsel.

### A. Ineffective Assistance of Penalty Phase Counsel

Mr. Dennis's first claim for federal habeas relief is that his counsel rendered a deficient performance during the penalty phase of his trial because counsel "made a 'less than complete investigation' and that his omissions were the result of either no strategic decision at all, or of a 'strategic decision' that was

itself unreasonable, being based on an inadequate investigation." DE 1 at 46. Mr. Dennis also argues that this deficient performance prejudiced him because the jury never heard substantial mitigating evidence "including the deprivation he suffered due to the abandonment by his mother, the poverty he endured, the posttraumatic stress disorder resulting from having grown up in an environment rife with drugs, prostitution, and violence which he had witnessed." DE 1 at 60. Mr. Dennis contends that "[h]aving this new information before it, Mr. Dennis's jury could certainly have considered it significantly mitigating." Id. at 69. Mr. Dennis asserts that the Florida Supreme Court unreasonably applied clearly established federal law because it conducted a "flawed" and "truncated" prejudice analysis which was rejected by the United States Supreme Court in Porter v. McCollum, 558 U.S. 30 (2009).

In order to meet the standard for federal habeas relief, Mr. Dennis must show that the Florida Supreme Court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Mr. Dennis has not met this high standard. The record reflects that the state court's determination that Mr. Dennis failed to show prejudice was not

10

unreasonable.

*The Strickland Standard*

Mr. Dennis's claims are governed by Strickland v. Washington, 466 U.S. 668 (1984). These claims are also governed by the deferential standards of the AEDPA. In Strickland, the United States Supreme Court set forth the two-prong test that a convicted defendant must meet to demonstrate that his or her counsel rendered ineffective assistance. First, a defendant "must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. Second, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Court defines a "reasonable probability" as one "sufficient to undermine confidence in the outcome." Id. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. There is no dispute that the clearly established federal law applicable here is Strickland v. Washington.

> In Strickland, this Court made clear that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation ... [but] simply to ensure that criminal defendants receive a fair trial." 466 U.S., at 689, 104 S.Ct. 2052. Thus, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the

11

trial cannot be relied on as having produced a just result." Id., at 686, 104 S.Ct. 2052 (emphasis added). The Court acknowledged that "[t]here are countless ways to provide effective assistance in any given case," and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id., at 689, 104 S.Ct. 2052.

Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011). The Court reviews Mr. Dennis's claims applying the clearly established federal law of Strickland and its progeny while also giving deference to the state court's decisions as required by the AEDPA.

### i. Penalty Phase Testimony

At the penalty phase of Mr. Dennis's trial, the State presented five witnesses during its case in chief: (1) Charlie Postell, Marlin Barnes's mother; (2) Earl Lee, Marlin Barnes's best friend and roommate at the University of Miami; (3) Dwayne Lee, Timwanika Lumpkins' father, (4) Chaka Khan Dekeisha Williams, Timwanika Lumpkins' best friend; and (5) Dr. Valerie Rao, associate medical examiner for Miami-Dade County. DE 13-147, DE 13-148. The friends and family testified about the impact the death of each victim has had on their lives and the lives of their families.

The defense then presented three witnesses: (1) Elaine Williams, Mr. Dennis's mother; (2) Annie Siplin, Mr. Dennis's maternal grandmother; (3) Virginia Dennis, Mr. Dennis's paternal grandmother. DE 13-149. Mr. Dennis's witnesses all testified about essentially the same things which were that his parents had not been married, his mother was a teenager when he was born, he

graduated high school and went to college on a football scholarship but left before he graduated to pursue a career in rap music.  The witnesses testified that Mr. Dennis's career in the music industry had some mild success until the group disbanded and then Mr. Dennis became otherwise employed in the local community.  They also testified that Mr. Dennis had a loving relationship with his three children, had not been in trouble with the law before, and did not take drugs or abuse alcohol.  All three witnesses' testimony comprised a mere fifteen pages of the trial transcript.  DE 13-149 at 55-70.

The State presented two rebuttal witnesses: (1) Patrick McKeithan, Timwanika Lumpkins's uncle; and (2) Katina Lynn, a former girlfriend of Mr. Dennis.  DE 13-149.  Both witnesses testified as to violent altercations that they had with Mr. Dennis wherein he had threatened them with a gun.

At the <u>Spencer</u> hearing,[7] neither side presented any additional testimony. Counsel for Mr. Dennis gave argument as to why his client should be spared the death penalty.  Mr. Dennis did not testify.

The trial court adopted the sentencing recommendation of the jury and sentenced Mr. Dennis to death.  The Florida Supreme Court affirmed on direct appeal.  During postconviction, Mr. Dennis contended that his counsel was ineffective during the penalty

---

[7] <u>Spencer v. State</u>, 615 So.2d 688 (Fla. 1993).

phase. The trial court summarily denied the claim, but the Florida Supreme Court ordered the trial court to conduct an evidentiary hearing. The testimony is summarized below.

### ii. Postconviction Testimony

Mr. Dennis first called Ronald Guralnick, Esq., to the stand. DE 13-238 at 21. Mr. Guralnick represented Mr. Dennis at both the guilt and penalty phases of trial. Mr. Guralnick testified that he did not hire a second chair attorney because "[i]t was not mandatorilly [sic] required and I thought I was perfectly capable of doing both." Id. at 34. Mr. Guralnick also testified that he did not retain or seek the assistance of a mental health expert because he did not have any indication that Mr. Dennis had mental health issues.

Next, the defense called Dr. Sherrie Bourg Carter. DE 13-240 at 36. Dr. Bourg Carter is a licensed psychologist. In 2003, Dr. Bourg Carter evaluated Mr. Dennis. She conducted a clinical interview, mental status examination and a penalty phase interview. Dr. Bourg Carter also reviewed Mr. Dennis's public school records, employment records and department of corrections records. She also performed three tests; the MMPI, the Detail Assessment Posttraumatic Stress, and the PCL-R. Id. at 63. Dr. Bourg Carter ultimately diagnosed Mr. Dennis with "mild posttraumatic stress." Id. at 70. Dr. Bourg Carter concluded that Mr. Dennis did not meet the criteria for statutory mitigation but that he would have

established posttraumatic stress disorder and a history of exposure to violence in his community as a child as non-statutory mitigation.

Mr. Dennis also called his maternal grandmother, Annie Siplin, to the stand. DE 13-241 at 73. She testified to the type of community where Mr. Dennis grew up and the circumstances in which he was raised. She also testified that she met with trial counsel on three occasions. Ms. Siplin testified that Mr. Guralnick never asked her any questions about Mr. Dennis's childhood, relationship with his parents, or any other questions about possible mitigation. Ms. Siplin also testified that trial counsel never told her that her grandson was facing the death penalty.

Thereafter, Mr. Dennis's mother, Elaine Williams, testified. DE 13-242 at 32. Ms. Williams recounted her substance abuse issues and use of cocaine and alcohol during Mr. Dennis's youth. She also testified that she only met with trial counsel twice during his representation of her son. Ms. Williams testified that she was never asked about the neighborhood, the circumstances of his childhood, or her drug and alcohol abuse. DE 13-243 at 11. Similar to Ms. Siplin, Ms. Williams also testified that Mr. Guralnick did not advise her that Mr. Dennis was facing the death penalty.

Mr. Dennis's paternal grandmother, Virginia Dennis, also testified. DE 13-243 at 26. Ms. Dennis testified that her

15

grandson came to live with her when he was two weeks old.  She also testified that Mr. Dennis's mother would occasionally come to pick him up and would appear to be under the influence of some substance.  Ms. Dennis remembered meeting with trial counsel on two occasions.  However, she testified that Mr. Guralnick did not tell her that Mr. Dennis was facing the death penalty if he was convicted.

Finally, the defense presented Marvin Dunn, PhD, as an expert in community and school psychology.  DE 13-243 at 52.  Dr. Dunn had interviewed Mr. Dennis, his mother, grandmothers and father in 2004.  Dr. Dunn re-interviewed Ms. Williams and Ms. Siplin within a month of the hearing.  Dr. Dunn testified that given the level of dysfunction at home that Mr. Dennis "basically raised himself." Id. at 73.  Dr. Dunn testified that children who are consciously abandoned "tend never to get over that sort of abandonment."  DE 13-245 at 10.

The State presented the testimony of Enrique M. Suarez, PhD. DE 13-246 at 27.  Dr. Suarez reviewed the educational and employment records of Mr. Dennis, as well as certain transcripts of testimony of the defense experts, police reports, and conducted a clinical interview of Mr. Dennis.  Id. at 59.  Dr. Suarez also administered the MMPI exam and reviewed the results of the PTSD exam which had been conducted by the defense expert in 2003.  Dr. Suarez testified that Mr. Dennis did not score a likelihood for the

presence of PTSD.   In sum, Dr. Suarez testified that Mr. Dennis does not suffer from posttraumatic stress disorder.   After the conclusion of the evidentiary hearing, the trial court denied the claim.

### iii.   *The State Court's Decision*

On appeal, the Florida Supreme Court affirmed the finding that Mr. Dennis failed to show prejudice.

> Dennis did not meet his burden of demonstrating prejudice. During the evidentiary hearing after the second remand, Dennis presented evidence of an upbringing in poor and violent neighborhoods primarily with two different grandmothers as well as expert testimony establishing that this upbringing would have left him feeling isolated, abandoned, and desensitized to violence. However, the testimony also demonstrated that the family that raised him loved him and did not abuse him. Furthermore, while there was conflicting mental health evidence that he suffered from post-traumatic stress disorder, even the evidence supporting the presence of this disorder demonstrated that the disorder was mild and in partial remission. Thus, considering the evidence presented during the evidentiary hearing as well as the evidence presented during the penalty phase, the mitigating circumstances would not have outweighed the four aggravating circumstances present in this case, namely HAC, CCP, during the course of a burglary, and conviction of a capital felony. See Porter, 130 S.Ct. at 453-54; Breedlove v. State, 692 So.2d 874, 878 (Fla. 1997). Therefore, confidence in the outcome of the penalty phase is not undermined.

Dennis v. State, 109, So.3d 680, 695-96 (Fla. 2012).   As the Florida Supreme Court reached the merits of this claim, the Court must deny habeas relief unless the Florida Supreme Court's determination resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

17

federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  In other words, Mr. Dennis must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

The Court has reviewed the evidence presented at both the penalty phase and the evidentiary hearing and finds that the Florida Supreme Court's prejudice analysis was more than reasonable.  It is true that there was evidence presented at the evidentiary hearing which was not presented during the penalty phase.  However, when re-weighing the postconviction evidence in conjunction with the testimony from the penalty phase of trial against the heavily weighted aggravation in this case, the Court does not find it unreasonable for the Florida Supreme Court to have found that prejudice was not demonstrated.  Mr. Dennis offered a troubled upbringing in a poor and crime ridden neighborhood; yet, he did not fall into drug or alcohol abuse.  Mr. Dennis also earned a football scholarship to college and enjoyed a moderately successful career in the music industry.  Even his own expert testified that he only exhibited a mild form of posttraumatic stress disorder.  Considering that the State established four aggravating factors including that the crimes were heinous, atrocious, and cruel, and committed in a cold, calculated, and

premeditated manner, the Court does not find the prejudice determination of the Florida Supreme Court unreasonable. Habeas relief must be denied.

### B. Violation of <u>*Brady v. Maryland*</u>

Mr. Dennis's second claim for federal habeas relief is that the State of Florida violated his rights under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). DE 1 at 69. The substance of his claim is that "the State was in possession of a memorandum it sent to Dr. Rao, prepared as an 'outline of the medical testimony we need to present to the jury in the upcoming death penalty proceedings'" but did not turn this document over to the defense. <u>Id.</u> at 70. Mr. Dennis argues that had he been in possession of this memo, he would have been able to impeach the testimony and challenge the credibility and opinions of Dr. Rao when she testified during the penalty phase of his trial.

The precursor to this claim is that the medical examiner, Dr. Sam P. Gulino, who had performed the autopsies on the two victims and who had testified during the guilt phase of the trial was no longer available when the penalty phase began. DE 13-149 at 11. Therefore, the State put on the testimony of Dr. Valerie Rao, who was an associate medical examiner for Miami-Dade County. Counsel for Mr. Dennis objected to her testimony on the grounds that another medical examiner's report is hearsay. The State argued that "[s]he has read through the trial transcript of Dr. Guilno.

19

She has prepared by reading the medical examiner protocols, as well as seen information. She's intimately familiar with all aspects of this case." Id. at 12-13.  The objection was overruled and Dr. Rao testified.

In response to a postconviction public records request, the State produced a memorandum from Joshua Weintraub, Assistant State Attorney, to Dr. Rao outlining "the medical testimony we need to present to the jury in the upcoming death penalty proceedings."  DE 13-232 at 50.  This memorandum is the subject of the instant claim.

Mr. Dennis asserts that this memorandum "went well beyond mere witness preparation."  DE 1 at 71.  Mr. Dennis argues that "[w]hen Dr. Rao's testimony is considered under all the circumstances – – and compared in detail to Dr. Gulino's testimony - - it is apparent that the memo is tantamount to witness coaching."  Id.

Here, the Florida Supreme Court declined to analyze whether or not this evidence was favorable or even suppressed by the State because the court found that it was not material.  See Dennis, 109 So.3d at 697.  As such, the Court declines to make such a determination either.  It is the Court's duty to first review the Florida Supreme Court's application of clearly established federal law to the facts of the case for reasonableness.  The facts show as follows:

### i.  *Guilt Phase*

At trial, the State presented the testimony of Dr. Sam Gulino.

20

DE 13-135 at 13.   Dr. Gulino performed the autopsies on both
victims in this case and surveyed the crime scene.   Dr. Gulino
authenticated the autopsy photographs of the victim's injuries,
which were published to the jury. He described victim Timwanika
Lumpkins as having multiple lacerations to her scalp and ear and
skull fractures, resulting in the bone lacerating the brain.   Id.
at 46-47.  Dr. Gulino testified that these injuries were the result
of being struck with a great amount of force by a shotgun.   He
testified that the level of force present was "normally the type
that you would see in fatal highway speed motor vehicle accidents."
Id. at 51.   Dr. Gulino further testified that several of Ms.
Lumpkins synthetic nails had been broken off and there was bruising
on her hands consistent with defensive wounds.   Id. at 63-66.  When
asked if Ms. Lumpkins knew that she was being beaten to death Mr.
Gulino responded "I can't say that she would know she was being
beaten to death.   She would know she was being beaten as indicated
by the fact she has defensive wounds on her hands." Id. at 66-67.

     Dr. Gulino also conducted the autopsy of victim Marlin Barnes.
He testified that Mr. Barnes had "multiple lacerations and bruises
all over the face and forehead, on both cheeks, and on the lower
lip, bruising on both cheeks and around the eyes." Id. at 68.  Dr.
Gulino testified that Mr. Barnes's wounds were consistent with
having been beaten with a trigger guard from a shotgun. Mr. Barnes
also suffered multiple lacerations to his lip and several teeth

were "broken and missing." Id. at 74.  Dr. Gulino testified that Mr. Barnes had injuries to both his forearms and hands consistent with defensive wounds.  Mr. Barnes sustained injuries that caused hemorrhaging around the eyes and the tissue inside the eyeballs such that he was likely blinded during the assault.  Dr. Gulino testified that Mr. Barnes would have been aware as to what was happening to him.

Likewise, Mr. Barnes's roommate, Earl Little, testified that Mr. Barnes was alive when he first arrived at the apartment.  Mr. Little said that Mr. Barnes responded "a little bit" when he called out his name and that he could hear Mr. Barnes "breathing hard." DE 13-115 at 60.  Mr. Little testified that Mr. Barnes turned his head "just enough for me to see his face." Id. at 62.  The record further shows that Ms. Lumpkins was still alive when she was transported to Jackson Memorial Hospital before she was later pronounced dead.

### ii.  Penalty Phase

At the penalty phase, the State called Dr. Valerie Rao, assistant medical examiner, Miami-Dade County.  DE 13-149 at 8. Dr. Rao testified that the victim's defensive wounds were evidence of the victims' consciousness during the time when they were being attacked.  Dr. Rao testified that Ms. Lumpkins was likely conscious until she suffered a hinge fracture at the base of her skull which "is so lethal that she would not be able to respond by trying to

shield herself." DE 13-149 at 19. Dr. Rao also testified that Ms. Lumpkins would have had the ability to hear what was taking place prior to her suffering the hinge fracture. When asked about the level of pain that Ms. Lumpkins must have experienced, Dr. Rao responded that "you look at what this girl suffered while she was aware of what was going on, she suffered a remarkable degree of pain." Id. at 22. Unlike Dr. Gulino, Dr. Rao testified that Ms. Lumpkins "probably had a good idea that she was going to die." DE 13-149 at 24. Dr. Rao also testified that, based on his defensive wounds, Mr. Barnes suffered a similar amount of pain to that suffered by Ms. Lumpkins. Dr. Rao described Mr. Barnes's pain as "fairly marked," based on the degree of the bleeding. Id. at 25. Dr. Rao testified that Mr. Barnes would have been able "to hear cries of pain or anguish coming from a back bedroom" while he would have attempted to get up and render aid. Id. at 27. Further, Dr. Rao testified that Mr. Barnes would have been aware of his surroundings until he lost consciousness and would have been able to feel pain. While still conscious, Mr. Barnes would have been able to hear "cries or moaning from a back bedroom." Id. at 30. Dr. Rao ascribed a 98 percent certainty to her testimony as to these facts.

### iii. the State Court Decision

Mr. Dennis raised this claim in his Rule 3.851 motion. The trial court denied the claim, and the Florida Supreme Court

affirmed.

Here, Dennis' argument regarding prejudice centers upon the possibility of using the memo to impeach Dr. Rao's penalty phase testimony, which Dennis argues was improperly inflammatory and coached in support of the HAC aggravator. However, other evidence supporting HAC would not have been affected by this impeachment. For instance, it is undisputed that both victims in this case died as a result of brutal beatings and that both sustained defensive wounds. Dr. Gulino testified to those facts. Dr. Gulino also testified that the victims remained conscious and possibly heard the attacks on each other. Earl Little testified that Barnes was alive when Little entered the apartment. Furthermore, a police officer testified that Lumpkins was alive when he arrived at the apartment.

In fact, on direct appeal, this Court upheld the trial court's finding of the HAC aggravator based upon Dr. Gulino's and Toby Wolson's guilt phase testimony, not Dr. Rao's penalty phase testimony. Specifically, this Court stated:

  Both victims in this case suffered horrid injuries. The medical examiner, Dr. Gulino, testified that both victims suffered skull fractures as a result of the brutal beating they endured. Moreover, the evidence supports the trial court's finding that the victims were conscious for at least part of the attack as they had defensive wounds to their hands and forearms. Further, the State's blood stain pattern expert, Toby Wolson, testified that the bloodiness of the crime scene and the patterns of the blood stains strewn about the apartment supported the conclusion that Barnes got to his feet and struggled about the room after Dennis had already left. Accordingly, we find no error in the trial court's application of the HAC aggravator.

Dennis, 817 So.2d at 766. Similarly, when this Court upheld the CCP aggravator, it did not do so based upon Dr. Rao's testimony during the penalty phase. See id. at 766 ("There is substantial evidence in the record supporting the trial court's finding of the CCP aggravator. In addition to the record evidence recited in the trial court's sentencing order, Stewart testified that Dennis told him, 'Don't worry about it. Nobody would think to come here. I just had to do what I had to do and

24

> I didn't even go in my car.'"). Confidence in the outcome
> of the penalty phase is not undermined. As a result,
> Dennis cannot demonstrate the materiality prong of Brady.

Dennis, 109 So.3d at 696-97. The first step for the Court is to review the opinion of the Florida Supreme Court to determine if it applied the clearly established federal law that is applicable to Mr. Dennis's claim.

In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court established three criteria a criminal defendant must prove in order to establish a violation of due process resulting from the prosecution's withholding of evidence. Specifically, the defendant alleging a Brady violation must demonstrate: (1) that the prosecution suppressed evidence, (2) that the evidence suppressed was favorable to the defendant or exculpatory, and (3) that the evidence suppressed was material. United States v. Severdija, 790 F.2d 1556, 1558 (11th Cir. 1986). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Stewart, 820 F.2d 370, 374 (11th Cir. 1987) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). This was the standard applied by the Florida Supreme Court to the facts of Mr. Dennis's claim. In doing so, the court found that Mr. Dennis had failed to show materiality.

In order to establish materiality under Brady, Mr. Dennis must show a reasonable probability that, had the suppressed evidence

25

been disclosed, the jury would have reached a different result. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." <u>See</u> <u>Strickler</u>, 527 U.S. at 290. Without establishing that essential fact, Mr. Dennis cannot prevail on this claim. The Supreme Court has explained that the "touchstone of materiality is a 'reasonable probability' of a different result . . . . The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Kyles v. Whitley</u>, 514 U.S. 419, 434 (1995). Moreover, materiality "is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." <u>Id.</u> at 434-35. Materiality is to be evaluated in light of the cumulative effect of the undisclosed evidence. <u>See</u> <u>id.</u> at 436. Under this standard, Mr. Dennis's claim fails.

The Florida Supreme Court did not make an unreasonable determination of fact based on the record before it. As the court found, there was a multitude of evidence presented during the guilt phase which would have supported both the HAC and CCP statutory aggravators found by the trial judge. Aside from the direct testimony of Dr. Gulino and Earl Little, the State introduced a vast quantity of crime scene and autopsy photos which clearly

illustrated the brutal death suffered by each of the victims. Indeed, common sense would dictate that the jurors would have deduced from the physical evidence alone that this was a heinous, atrocious, and cruel crime.

Moreover, the Florida Supreme Court identified citations in both the trial court's sentencing order and its own opinion on direct appeal that showed that those two aggravators were supported by testimony other than Dr. Rao's. As such, being able to impeach Dr. Rao's credibility with the State's memorandum does not establish "a reasonable probability that had this evidence [the memorandum] been disclosed to the defense, the result of the proceeding would have been different." See United States v. Bagley, 473 U.S. 667, 678 (1985) (recognizing that "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial"). The Florida Supreme Court's determination was not unreasonable. Habeas relief is denied.

### C.  *Trial Court Error in Admission of Testimony*

Mr. Dennis's third claim for federal habeas relief is that the trial court erred when it denied a defense motion to exclude an unreliable identification of the car seen near the nightclub where the victims were before they were murdered. DE 1 at 80. Mr. Dennis asserts that the Florida Supreme Court made a "patently

unreasonable determination of the facts given the evidence presented at trial" when it found that the witness's initial description of the car was "fairly accurate." Id. at 83.  Mr. Dennis does not take issue with the Florida Supreme Court's application of the law; rather, he argues that the court misinterpreted the facts when applying them to the law.  The State asserts that Mr. Dennis's claim is different from most unduly suggestive identifications because the challenge was not to the identification of a person but the identification of a car.  The State argues that, since the United States Supreme Court has not addressed the issue, then the Florida Supreme Court's determination cannot be an unreasonable application of clearly established federal law as there is no clearly established federal law on point.  However, as Mr. Dennis has not asserted an unreasonable application of law but contends that the Florida Supreme Court made an unreasonable determination of the facts, the Court first considers this contention.

On direct appeal, the Florida Supreme Court found the following:

> At trial, El-Djeije testified that she worked as an attendant at a Miami Beach Amoco station near Club Salvation on the night of April 12, 1996, until 8:30 a.m. the following morning. That night, El-Djeije called police when she became suspicious of a black man dressed entirely in black wearing a hooded sweatshirt standing next to a Nissan parked at the station. In that call, the tape of which was introduced at trial, El-Djeije described the vehicle as a gray four-door 1986 or 1987 Nissan. Although not on the aforementioned tape,

28

El-Djeije observed that the car did not have a license
plate. Following the discovery of the bodies, Detective
Juan Sanchez of the Miami-Dade Police Department met with
El-Djeije at the gas station and showed her a photograph
of Dennis' car, a Mazda Protégé. El-Djeije told Sanchez
that she did not recognize the Mazda and informed him
that the car she saw was a Nissan. Several weeks later
Sanchez returned to the gas station and showed her a
picture of Wallace's Nissan Sentra. According to Sanchez,
El-Djeije identified Wallace's car without hesitation.

Dennis argues that this procedure was unduly suggestive.
We disagree. A two-pronged test is used to determine
whether suppression of an out-of-court identification is
warranted: "(1) did the police use an unnecessarily
suggestive procedure to obtain the out-of-court
identification; (2) and if so, considering all the
circumstances, did the suggestive procedure give rise to
a substantial likelihood of irreparable
misidentification." Thomas v. State, 748 So.2d 970, 981
(Fla. 1999). The factors to be considered in the
determination of whether the identification of the
vehicle was reliable are all comparable to factors
considered in a witness's identification of a suspect:

> [T]he opportunity of the witness to view the
> criminal at the time of the crime, the witness'
> degree of attention, the accuracy of the witness'
> prior description of the criminal, the level of
> certainty demonstrated by the witness at the
> confrontation, and the length of time between the
> crime and the confrontation.

Pittman v. State, 646 So.2d 167, 171 (Fla. 1994) (quoting
Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34
L.Ed.2d 401 (1972)).

Although the State argues that there is no support to
apply the aforementioned analysis to the identification
of physical evidence, this Court in Pittman applied the
aforementioned analysis to physical evidence.

In Pittman, the defendant claimed error in the court's
admission of the out-of-court identification of the
defendant's wrecker. Pittman was convicted of murdering
three members of his estranged wife's family in their
home and burning the home thereafter. On the morning of
the fire a construction worker noticed a car belonging to

one of the victims in a ditch near his job site and observed a homemade wrecker approach the car. Shortly thereafter he observed a cloud of smoke coming from the car's direction. Later that evening the police drove the witness to Pittman's home to observe Pittman's wrecker. The witness was unable to recognize the wrecker as it had been disassembled. After the police reassembled the wrecker, the police brought the witness back to Pittman's home and the witness positively identified the wrecker. Another witness, who had observed a homemade wrecker in the early morning hours following the murders, identified Pittman's wrecker weeks later from a photo-pak that consisted solely of photographs of Pittman's wrecker.

In rejecting Pittman's claim we explained: "We have reviewed the record and find that, under the facts of this case, none of the identifications described above were unduly suggestive under the Neil_FN7 test. The first and second witnesses had a sufficient opportunity to view the wrecker and had given fairly accurate descriptions before the in-person identification." We conclude similarly here.

  FN7. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

El-Djeije's initial description of Wallace's car was fairly accurate. She accurately described the color and make of the car. Moreover, she observed that the vehicle did not have a license plate in the place where one would be typically displayed. The discrepancies in El-Djeije's description were the proper subject of cross-examination, but not sufficient to amount to a bar to admissibility.

Dennis, 817 So.2d at 760-61.  Here, the court found that the witness's initial description (before the unduly suggestive photo identification) of the car was "fairly accurate." Mr. Dennis asserts that this was a "patently unreasonable determination of the facts given the evidence presented at trial." DE 1 at 83. The State denies this and asserts that the Florida Supreme Court's interpretation of the facts are entitled to a presumption of

30

correctness which must be rebutted by clear and convincing evidence without first considering the reasonableness of the factual determination.[8]  DE 10 at 168.

The standard of review here calls into question the interplay between and the application of § 2254(d)(2) and § 2254(e). The United State Supreme Court has twice rejected the opportunity to specifically address this issue.

> AEDPA instructs that, when a federal habeas petitioner challenges the factual basis for a prior state-court decision rejecting a claim, the federal court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." § 2254(e)(1). We have not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1), and we need not do so here. See Wood v. Allen, 558 U.S. 290, 293, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). For present purposes, it is enough to reiterate "that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in

---

[8] The Court rejects the State's interpretation of federal law on this issue. Here, the State cites to Sumner v. Mata, 455 U.S. 539 (1981) and Gilliam v. Sec'y, Dep't of Corr., 480 F.3d 1027 (11th Cir. 2007). Sumner is pre-AEDPA law. AEDPA changed the standard of review for federal habeas petitions in 1996. Moreover, the State takes the "presumption of correctness" obligation and conflates it with the clear and convincing evidence standard of 28 U.S.C. 2254(e) without consideration of the reasonableness standard of 2254(d)(2).  This is not what Gilliam says. Rather Gilliam stated that "[a]nd, for a writ to issue because the state court made an 'unreasonable determination of the facts,' the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.' 28 U.S.C. § 2254(e)(1)."  480 F.3d at 1032.

the first instance." Id., at 301, 130 S.Ct. 841.
AEDPA likewise imposes a highly deferential
standard for reviewing claims of legal error by the
state courts: A writ of habeas corpus may issue
only if the state court's decision "was contrary
to, or involved an unreasonable application of,
clearly established Federal law, as determined by"
this Court. § 2254(d)(1).

Burt v. Titlow, 134 S.Ct. 10, 15 (2013)(quoting Wood v. Allen, 558

U.S. 290 (2010)("We granted certiorari to address the relationship

between §§ 2254(d)(2) and (e)(1). We conclude, however, that the

state court's factual determination was reasonable even under

petitioner's reading of § 2254(d)(2), and therefore we need not

address that provision's relationship to § 2254(e)(1).")).

Here, the Court applies the analytic approach of the United

States Supreme Court and will first determine the reasonableness of

the Florida Supreme Court's finding that Ms. El-Djeije's

description was "fairly accurate" before considering any rebuttal

by clear and convincing evidence. The record shows the following:

Prior to trial, counsel for Mr. Dennis argued that the photo

identification of Mr. Dennis's girlfriend's car was the product of

an unduly suggestive line-up because the line-up consisted of only

one photo. DE 13-50 at 19-26. After argument, the court denied

the motion to exclude but advised counsel that he "can cross-

examine extensively on it." Id. at 26.

At trial, the State called Nidia El-Djeije to testify. DE 13-

120 at 9. Ms. El-Djeije was employed at Beach Amoco on the night

of the murders. Beach Amoco is in front of a nightclub called

Salvation.  The victims had attended a party at that nightclub on the night of the murder.  Ms. El-Djeije testified that she saw "a gray Nissan parked next to [the] stop sign on the gas station premises."  Id. at 11.  She testified that there was a black man wandering around the car.  At one point, she called the police and reported that she thought this man was trying to steal the car. The police had not arrived before this man began walking around the parking lot and close to the gas station so Ms. El-Djeije called the police again.  By the time the police had arrived, the Nissan had left, but it returned later.  This time Ms. El-Djeije called the towing company who typically removes unauthorized cars from the Amoco property.  The tow truck driver spoke to the driver of the Nissan and left.  Ms. El-Djeije was unable to see inside the Nissan because it had tinted windows.  Id. at 24.

At trial, Ms. El-Djeije testified that she knew the car was a Nissan because she saw the emblem, and she noted that she did not see a license plate "where your tag usually normally is installed." Id. at 25. Ms. El-Djeije testified that the following week the police came and showed her a photograph of a gray Nissan and she identified it as the car that she saw on the night in question.

However, on cross-examination, she testified that on the 911 calls regarding the car, she identified the car as a four door '86 or '87 Nissan.  Also, the 911 initial call did not reflect her description that the car had no license plate, but Ms. El-Djeije

testified that she did advise the police of that fact during her second 911 call.   Likewise, Ms. El-Djeije testified that she advised the police about the missing license plate in her sworn statement.  Id. at 46.

Afterwards, the State called Jose Rodriguez who was the tow truck driver who spoke with the driver of the Nissan.   Mr. Rodriguez testified that the car he saw that night was a light silver Nissan.   Id. at 53. He also testified that there is not a vast difference between a '85 or '86 model and a model from the early 90's.

Finally, Detective Juan Sanchez, who spoke with Ms. El-Djeije regarding the car and the photo identification, testified.   DE 13-121 at 22.   Detective Sanchez testified that Ms. El-Djeije made a positive identification of Ms. Wallace's Nissan as the car she saw the night of the murder.   She did so without hesitation.   Id. at 29.   On cross-examination, Detective Sanchez testified that, while Ms. El-Djeije did not mention that the vehicle she saw on the night of the murder had any damage on the passenger side of the vehicle, she also did not change her testimony regarding the car not having a license plate.   Detective Sanchez testified that when Ms. El-Djeije saw the photograph of the car taken during the day and it did have a license plate in the tinted back window that she understood why she did not think the car had a license plate.  Id. at 33.

In order for the Court to grant Mr. Dennis habeas relief, the Court would have to find that the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). More importantly, "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt v. Titlow, 134 S.Ct. at 15 (internal quotation marks omitted). Indeed, "even if reasonable minds reviewing the record might disagree about the [fact] finding in question, on habeas review that does not suffice to supersede the [state] trial court's determination." Wood v. Allen, 558 U.S. 290, 301 (2010) (quoting Rice v. Collins, 546 U.S. 333, 341-42 (2006))(alterations omitted).

Here, the record reflects that Ms. El-Djeije's initial description included the accurate color of the car, the fact that it was a Nissan made within a span of years where the body type had not markedly changed, and that no license plate was in the space where license plates are typically placed on automobiles. To find that this description is "fairly accurate" is certainly not unreasonable. Habeas relief is denied.

### D. Cumulative Effect of Trial Court Errors

Mr. Dennis asserts that the trial court committed several errors which cumulatively amounted to constitutional error and deprived him of the rights guaranteed to him by the Sixth, Eighth,

and Fourteenth amendments to the Constitution.  Specifically, Mr. Dennis contends that he was denied a fair trial and penalty phase because of: (1) the State's introduction of evidence that Mr. Dennis's girlfriend, Watisha Wallace, burned the car which the State alleged had been used in the crimes; (2) the admission of hearsay and opinions and the unsworn testimony of the prosecutor; and (3) the trial court's failure to instruct the jurors that they should use great caution in relying on the testimony of a witness who was involved in the crime.  Mr. Dennis asserts that "[t]he Florida Supreme Court failed to view those claims cumulatively and instead addressed them in a piecemeal fashion, finding no single claim to, in and of itself, amount to a constitutional error."  DE 1 at 85.  This claim suffers from multiple infirmities.

*Exhaustion*

First, the Court has reviewed Mr. Dennis's initial brief to the Florida Supreme Court on direct appeal.  There is a simple and straightforward reason that the Florida Supreme Court did not review Mr. Dennis's claims for the cumulative effect of errors: Mr. Dennis did not ask them to do so.  Therefore, any cumulative effect of trial court error claim is unexhausted and procedurally barred from review.

To exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court.  Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis

36

added). "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights." Cone v. Bell, 556 U.S. 449, 465 (2009)(internal citations omitted).

Ordinarily, a federal habeas corpus petition which contains unexhausted claims is dismissed pursuant to Rose v. Lundy, 455 U.S. 509 (1982), allowing Mr. Dennis to return to the state forum to present his unexhausted claim or claims. However, such a result in this instance would be futile, since Mr. Dennis's unexhausted claim is now incapable of exhaustion at the state level and would be procedurally barred under Florida law. Mr. Dennis has already pursued a direct appeal and post-conviction motions in state court, with the denial of the motions affirmed on appeal.[9]

As there are no procedural avenues remaining available in Florida which would allow Mr. Dennis to return to the state forum and exhaust the subject claim, the claim is likewise procedurally

---

[9] In Florida, issues which could be but are not raised on direct appeal may not be the subject of a subsequent Rule 3.850 motion for post-conviction relief. Kennedy v. State, 547 So.2d 912 (Fla. 1989). Further, even if the subject claim was amenable to challenge pursuant to a Rule 3.850 motion, it cannot now be raised in a later Rule 3.850 motion because, except under limited circumstances not present here, Florida law bars successive Rule 3.850 motions. See Fla. R. Crim. P. 3.850(f); see also Moore v. State, 820 So.2d 199, 205 (Fla. 2002)(holding that a second or successive motion for post-conviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion).

defaulted from federal review.  Collier v. Jones, 910 F.2d 770, 773 (11th Cir. 1990) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are procedurally barred in federal court as well).  "A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system."  Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (citing 28 U.S.C. § 2254(b)(2)).  Claims that are unexhausted and procedurally defaulted in state court are not reviewable by the Court unless the petitioner can demonstrate cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in Murray v. Carrier, 477 U.S. 478 (1986).  See House v. Bell, 547 U.S. 518 (2006); Dretke v. Haley, 541 U.S. 386 (2004); see also United States v. Frady, 456 U.S. 152, 168 (1982).  Since Mr. Dennis has not alleged, let alone established, cause to excuse his default, it need not be determined whether he suffered actual prejudice.  See Glover v. Cain, 128 F.3d 900, 904 n.5 (5th Cir. 1997).

On direct appeal, Mr. Dennis asserted these claims as three separate and distinct claims which were individually analyzed by the Florida Supreme Court.  DE 13-1.  Here, however, Mr. Dennis has

grouped these three separate and distinct claims as they were made in the state court but combined them to assert a broader accumulated claim that Mr. Dennis's Sixth, Eighth, and Fourteenth Amendment rights were violated due to the cumulative effects of the errors.[10]   As articulated above, Mr. Dennis cannot do this. Moreover, the underlying individual claims that support Mr. Dennis's cumulative effects claim are without merit or not cognizable claims for federal habeas review.

### i.  *Watisha Wallace's car*

Mr. Dennis's first contention is that the trial court erred when it allowed evidence to be admitted at trial regarding a burned automobile which belonged to his girlfriend.  DE 1 at 86.  This issue arose when the State called Watisha Wallace to the stand. Ms. Wallace was Mr. Dennis's girlfriend and the owner of a 1992 gray Nissan.  The State contends that it was her gray Nissan that Mr. Dennis drove on the night of the murders.  It was alleged that this is the same Nissan that Ms. El-Djeije identified as being the car at the Amoco station when she was shown a photo of the car by the detective.  In short, the State needed the car to establish that Mr. Dennis had premeditated and planned the murders by sitting

---

[10] It is worthy of note that whether or not "under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law" is an open question. See Morris v. Sec'y Dep't of Corr., 677 F.3d 1117, 1132, n.3 (11th Cir. 2012).

outside the nightclub where the victims were prior to their deaths.

At trial, Ms. Wallace testified that she was the sole driver and only had one key to her car at the time of the murder. On the day of the murder, she was in Daytona Beach and testified that she had her key with her at the time. DE 13-122 at 1. As such, she testified that Mr. Dennis did not have access to her car.

Prior to trial, Ms. Wallace pled guilty to arson for destroying the 1992 gray Nissan. The State then sought to admit into evidence Ms. Wallace's guilty plea to arson charges and the photographs of the burned vehicle. This evidence had been the subject of pre-trial motions to exclude. Those motions were granted. While the court specifically disallowed the admission of such evidence, during trial, the court allowed this evidence to come in under the guise of showing the jury that Ms. Wallace was biased against the State. Mr. Dennis claimed error. The Florida Supreme Court agreed. Dennis, 817 So.2d at 758-59. However, the Florida Supreme Court found this error to be harmless.

> Although error, we find the admission of this evidence to be harmless error. See, e.g., Rodriguez v. State, 753 So.2d 29 (Fla. 2000) (applying harmless error analysis to the erroneous admission of evidence). The evidence of the car burning was not a feature of this lengthy trial, in which over forty witnesses took the stand. See, e.g., Consalvo v. State, 697 So.2d 805, 813-14 (Fla. 1996) (holding prosecutor's closing argument, which highlighted the similarities between another burglary and the charged offense where the burglary was not admitted for that purpose, harmless error where the similarities between the crimes was [sic] not a feature of the trial). Further, the defense made the jury aware during its cross-examination of Wallace that she burned the vehicle

40

only after it was seized and searched by police. Moreover, Detective Romagni testified during cross-examination that the search of Wallace's vehicle netted no evidence. The defense emphasized this point to the jury in closing argument:

> The burning of that vehicle had absolutely nothing to do with this case. The police had that vehicle. They tested it in every way imaginable and they found nothing. So some act that she does that's illegal while he is in jail. He has never been charged with that and he has got nothing to do with it. That vehicle was burned merely for insurance fraud. It had nothing to do with this incident. The police already tested it. There was nothing there.

While the State referenced the car burning in its closing, it did so as part of its general attack on the credibility and perceived bias of Wallace, of which there was ample evidence absent the introduction of the car burning. FN6. This coupled with the fact that the jury was given a cautionary instruction prior to each instance in which the subject was approached leads us to conclude that the error in the admission of this evidence was harmless.

FN6. The following is the extent of the State's discussion of Wallace's burning of her car in its closing argument:

> He had a key to her car and she saw the key. Watisha said "no" he helped pay for my car, but he didn't have a key. Watisha who says that the car was in the same exact spot and Watisha who a few weeks after getting the car back from the police went out and burned it.

> The car used in this homicide she burned it and she pled guilty to burning it....

> By the way going back to Watisha. She said that she and the defendant were just friends and yet she told you that when he was arrested he was undressed, in his underwear, in her bed.

> What is she trying to hide here. Columbus Stafford told you he was investigating the arson of the car and somebody anonymous sent the factory key in the

> mail. Bob Love, the detective with the insurance
> commission told you that it was a factory key. It
> fit the car and two of them usually comes [sic] with
> the car.

Id. at 759. Mr. Dennis asserts that the Florida Supreme Court's analysis is flawed and that he was denied a fair trial and fair penalty phase. Mr. Dennis avers that the testimony of the State's star witness, Joseph Stewart, was questionable as, according to Mr. Dennis, Mr. Stewart had reason to lie about his own involvement and motivation to accuse someone else. Therefore, as the case against Mr. Dennis was largely circumstantial, he asserts that "any suggestion that evidence of guilt had been destroyed and, especially, that it had been destroyed by someone connected to the defendant, cannot be harmless." DE 1 at 103. However, what is absent from Mr. Dennis's argument is why the Florida Supreme Court's harmless error analysis was an unreasonable application of clearly established federal law.

In support of this claim, Mr. Dennis cites to §§ 90.401, 90.402, Fla. Stat. (1999); Charles W. Ehrhardt, Florida Evidence (2000 ed.), p.144, n.1 (§ 90.402 excludes, by implication, evidence which is not relevant."); "§ 90.403, Fla. Stat. (1999)", "§ 90.608 Fla. Stat. (1999)"; "Ehrhardt at § 608.20"; "R. Regulating Fla. Bar. 4.3.4(e)" and multiple cases from the Florida Supreme Court.[11]

---

[11] The lone citation to federal law was to U.S. v. Peterman, 841 F.2d 1474, 1479, n.3 (10th Cir. 1988) for the proposition that "evidence that is admissible for substantive purposes may not be purposely introduced under the pretense of impeachment."

State law and evidence rules offer Mr. Dennis no support on federal habeas review.

Here, the claim is whether or not the admission of evidence regarding Ms. Wallace's burned car was an error and, if so, whether that error was harmless.  The Florida Supreme Court determined that it was error but it was harmless.  In order to be an unreasonable application of clearly established federal law, Mr. Dennis must show that this decision was contrary to United States Supreme Court precedent.  Mr. Dennis has not done so.  "A constitutional error is harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Neder v. United States, 527 U.S. 1, 15 (1999)(quoting Chapman v. California, 386 U.S. 18, 24 (1967)); see also Delaware v. Van Arsdall, 475 U.S. 673 (1986).  There was ample evidence in the record to support a guilty verdict and the erroneous admission of this evidence did not contribute to the verdict.  The Florida Supreme Court's determination was not unreasonable.  Habeas relief is unavailable to Mr. Dennis for this claim.

### ii. Hearsay Testimony of the two Detectives

Mr. Dennis's next claim is regarding the hearsay testimony of two detectives.[12]  Mr. Dennis argues that the trial court erred when

---

[12] Mr. Dennis contends that the State was permitted to elicit the testimony of Detective "Hellman" who opined that Mr. Dennis was guilty because of the domestic abuse history between Mr. Dennis and Ms. Lumpkins. Id.  This claim will not be considered on the merits because there is no evidence in the

it allowed certain hearsay testimony from Detectives Romagni and Hellman.  DE 1 at 104.  Specifically, Mr. Dennis asserts that Detective Romagni was allowed to testify that he knew of eyewitnesses to Mr. Dennis's abuse and threats towards Ms. Lumpkins; Mr. Dennis's jealousy and spying on Ms. Lumpkins; Mr. Dennis's discovering where Mr. Barnes lived; Mr. Dennis's knowledge that Ms. Wallace's car was available the weekend of the murders; Mr. Dennis's appearance at Zemoria Wilson's apartment on the morning after the murders while dressed in all black, and Mr. Dennis's possession of the murder weapon.  See DE 1 at 104.  At trial, Mr. Dennis's counsel objected but the trial court overruled the objection.  Whether or not this evidence was admitted is an issue of state law.  Here, the Florida Supreme Court denied the claim because Mr. Dennis "opened the door" to this line of questioning during cross-examination.[13]

---

record that Detective "Hellman" testified to the above referenced information.

What is, perhaps, most remarkable about this claim is that this misidentification was brought to Mr. Dennis's attention during briefing on direct appeal at the Florida Supreme Court, and he advised the court in his reply brief that "Detective Poiter was mistakenly identified as Detective Hellman in appellant's initial brief, at 41..." DE 13-2 at 66. Yet, here, Mr. Dennis again asserted his claim as being based on the testimony of a Detective "Hellman." The State pointed this out in its Response to the Order to Show Cause (DE 10), but Mr. Dennis failed to address the issue in his Reply.  See DE 15.

[13] The Florida Supreme Court also found that had there been error, it would have been harmless.

> In Rodriguez v. State, 753 So.2d 29 (Fla. 2000), we
> explained the concept of "opening the door": "As an
> evidentiary principle, the concept of 'opening the door'
> allows the admission of otherwise inadmissible testimony
> to 'qualify, explain, or limit' testimony or evidence
> previously admitted. The concept of 'opening the door' is
> 'based on considerations of fairness and the
> truth-seeking function of a trial.'" Id. at 42 (citations
> omitted). Here the defense's cross-examination of Romagni
> opened the door to the State's line of questioning aimed
> at rebutting the defense's implication that the officers'
> investigation was less than thorough, relying solely on
> Stewart's word to arrest the defendant.

Dennis, 817 So.2d at 753.  Whether or not defense counsel opened

the door such that inadmissible hearsay became admissible is an

issue of state law, not a violation of the Constitution, laws, or

treaties of the United States.   28 U.S.C. § 2241 (2014).   Mr.

Dennis cannot raise, on federal habeas review, what is simply an

argument that the trial court erred in applying state law.

> We have stated many times that "federal habeas corpus
> relief does not lie for errors of state law." Lewis v.
> Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111
> L.Ed.2d 606 (1990); see also Pulley v. Harris, 465 U.S.
> 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984).
> Today, we reemphasize that it is not the province of a
> federal habeas court to reexamine state-court

------

> Even if we were to conclude that it was error to allow
> the State to pursue this line of questioning, any such
> error was harmless. Each and every point mentioned in
> Romagni's testimony on redirect was properly admitted
> into evidence through the testimony of other witnesses.
> See, e.g., Kearse v. State, 662 So.2d 677, 684–85 (Fla.
> 1995) (finding no error in the admission of hearsay
> evidence concerning the sequence of events and why the
> police focused their investigation on the defendant
> where the same evidence was admitted through the
> testimony of other witnesses).

Dennis, 817 So.2d at 753.

> determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241; <u>Rose v. Hodges</u>, 423 U.S. 19, 21, 96 S.Ct. 175, 177, 46 L.Ed.2d 162 (1975)(per curiam).

<u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Habeas relief is denied.

### iii. Jury Instruction

Finally, Mr. Dennis asserts that the trial court erred by not giving an instruction to the jury that they should "treat Mr. Stewart's testimony with great caution." DE 1 at 108. At trial, Mr. Stewart testified against Mr. Dennis. Mr. Stewart testified that Mr. Dennis asked him if he had any guns he could borrow. <u>See Dennis</u>, 817 So.2d at 747. Mr. Stewart provided Mr. Dennis with a shotgun but advised him that he was unsure whether it worked. Nonetheless, Mr. Dennis took the shotgun and later returned it to Mr. Stewart by leaving it behind some bushes at Mr. Stewart's mother's house.

Mr. Dennis argues that Mr. Stewart was an essential witness who "had some involvement in the crimes – at a minimum, the weapon used belonged to him, and he got rid, not only of the weapon, but of other evidence as well." DE 1 at 107. Therefore, Mr. Dennis contends that the court's failure to instruct the jury that "the testimony of state witnesses who are involved in the crime must be closely scrutinized and treated with great caution, and the jurors

should be instructed to that effect" was in error.  DE 1 at 108.
In support of this argument, Mr. Dennis cites to <u>Padgett v. State</u>,
53 So.2d 106, 109 (Fla. 1951); Fla. Std. Jury Instr. (Crim)
2.04(b).

The Florida Supreme Court rejected the claim citing <u>Boykin v.</u>
<u>State</u>, 257 So.2d 251 (Fla. 1971) and <u>Archer v. State</u>, 673 So.2d 17,
20, n.3 (Fla. 1996).

> This reasoning applies with equal force here. The
> defense's cross-examination of Stewart was dedicated to
> highlighting omissions in Stewart's early statements to
> police and his decision to hide the evidence out of fear
> of being considered a suspect. These facts were argued
> extensively by the defense in closing argument to urge
> the jury to disbelieve Stewart and to suggest that
> Stewart was the murderer and was merely attempting to lay
> the blame on Dennis. Accordingly, under the circumstances
> the general jury instruction on how to weigh the evidence
> was more than adequate to address Dennis' concerns.

<u>Dennis v. State</u>, 817 So.2d at 752.  Mr. Dennis's success on appeal
to the Florida Supreme Court was based on the proposition that the
trial court erred in construing the laws of Florida.  In fact, Mr.
Dennis's claim involves a pure question of state law.  Questions of
pure state law do not raise issues of constitutional dimension for
federal habeas corpus purposes. <u>Carrizales v. Wainwright</u>, 699 F.2d
1053 (11th Cir. 1983)(<u>citing</u> <u>Llamas-Almaguer v. Wainwright</u>, 666
F.2d 191, 193 (5th Cir., Unit B, 1982)). A state's interpretation
of its own laws or rules provides no basis for federal habeas
corpus relief, since no question of a constitutional nature is
involved. <u>Id.</u> (<u>citing</u> <u>Bronstein v. Wainwright</u>, 646 F.2d 1048, 1050

(5th Cir. 1981)).  The pronouncement by the Florida Supreme Court that section 2.04(b) was satisfied by the defense's closing argument, cross examination of Mr. Stewart, and the general jury instruction on how the jury is to treat the testimony of witnesses at his trial is binding on this Court.  Habeas relief must be denied.

### iv. Unsworn Testimony

Mr. Dennis's final assertion is that the prosecutor offered what amounted to unsworn testimony during her closing argument.  DE 1 at 104.  The comments at issue were made when the assistant state attorney told the jury that Mr. Stewart was not threatened or intimidated in an effort to garner additional incriminating evidence against Mr. Dennis.

> Joseph Stewart told that statement to myself and another state attorney on July 2nd in the State Attorney's Office.  The defendant had been in custody for these murders since April 30th, 1996, and he was still in custody on July 2nd and nobody had ever threatened. You heard the questions.
>
> Nobody ever threatened Joseph Stewart for being arrested for anything so the argument that Joseph Stewart came up with his because he was scared of getting arrested is [absurd]. The defendant was arrested and into custody.
>
> Joseph Stewart was out. Nobody ever said you are going to be arrested. Nobody ever said if you don't come up with some more evidence you are going to be arrested. Nobody said it looks bad for you Joseph.

Dennis, 817 So.2d at 755.  The defense did not object. Therefore, the Florida Supreme Court applied a fundamental error standard when

analyzing his claim.

> The State argues that the prosecutor's closing alluded to
> nothing the jury was not already aware of. We disagree. The
> import of Dennis' challenge to the State's closing argument
> was the prosecutor's "testimony" that no threats were made to
> Stewart during that interview to garner additional
> incriminating evidence against Dennis. Although the State's
> argument was improper, the record does not support a finding
> of fundamental error and the error was at best harmless.
> Detective Romagni's testimony made it clear to the jury that
> Stewart was never threatened with being arrested. Moreover,
> Stewart's statement to the prosecutor came well after Dennis
> was taken into custody on the strength of Stewart's initial
> statement to police. Accordingly, we reject Dennis' attempt to
> hold the prosecutor's argument fundamental error. Cf. Muhammad
> v. State, 782 So.2d 343 (Fla. 2001) (prosecutor's closing
> argument referring to facts not in evidence regarding the
> police's receipt of information from a BOLO, which evidence
> was ruled inadmissible pre-trial, not fundamental error); Pope
> v. Wainwright, 496 So.2d 798 (Fla. 1986) (holding prosecutor's
> reference in closing argument to having seen the defendant
> "grinning from ear to ear" during the testimony of a State
> witness was not fundamental error).

Id.

The best evidence of this claim being one that is not
cognizable for federal habeas review is that Mr. Dennis does not
argue that it is cognizable for federal habeas review. Rather, Mr.
Dennis cites to the Rules Regulating the Florida Bar and multiple
opinions from district courts of appeal in Florida in support of
his claim. DE 1 at 105. "Questions of pure state law do not raise
issues of constitutional dimension for federal habeas corpus
purposes." Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th
Cir. 1983). A precedent of a state court about an issue of state
law can never establish an entitlement to a federal writ of habeas
corpus. See Reese v. Sec'y, Dep't of Corr., 675 F.3d 1277, 1287

(11th Cir. 2012).

Moreover, Mr. Dennis did not argue that the Florida Supreme Court made an unreasonable application of clearly established federal law. Perhaps this is so because there is no clearly established federal law in support of this claim. "Our inquiry is limited to whether the state court unreasonably applied a holding of the Supreme Court, Williams, 529 U.S. at 412, and the Supreme Court has never held that a prosecutor's closing arguments were so unfair as to violate the right of a defendant to due process." Reese, 675 F.3d at 1287.[14]   Therefore, the Court does not consider the merits of this claim.

As the cumulative effects claim is unexhausted and the individual claims, as drafted, are without merit or not cognizable in a federal habeas petition, habeas relief is unavailable to Mr. Dennis on this claim.  Habeas relief is denied.

### E. Ineffective Assistance of Guilt Phase Counsel

Mr. Dennis's fifth claim for federal habeas relief is that he received ineffective assistance of counsel during the guilt phase

---

[14] But see, Reese, 675 F.3d at 1294 (Martin, J. concurring).("It is true that the Supreme Court has never granted habeas relief based upon a prosecutor's closing argument. But that fact alone does not mean the Supreme Court has not clearly established a standard by which such claims should be evaluated. Said another way, the Supreme Court can clearly establish federal law sufficient to support relief under AEDPA by establishing standards even in cases where the habeas petition is denied under that standard.")

of his trial.  He asserts two claims with multiple sub-claims. The first assertion is that his counsel was operating under an actual conflict of interest.  DE 1 at 115.  The second is that he was denied effective assistance of counsel at trial.

### i. Actual Conflict of Interest

Mr. Dennis asserts that his counsel had a conflict of interest because of his "work load" and because counsel "over the years ha[d] made a practice of taking high profile cases on a pro bono or 'defacto' pro bono basis." DE 1 at 116.  Mr. Dennis asserts that he does not need to show actual prejudice but if he did he could because the record shows "that trial counsel failed to adequately challenge the prosecution's case." Id. at 117.  This is the extent of his prejudice argument.  On its face, the prejudice argument is insufficiently pled.  Mr. Dennis has failed to identify with any specificity what in the record reflects counsel's failings. Therefore, Mr. Dennis could only prevail on this claim if he did not need to show prejudice.  Mr. Dennis does not meet that standard.

"We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980).

We will not find an actual conflict unless [the defendant] can point to specific instances in the record

51

> to suggest an actual conflict or impairment of [her
> interest]. The defendant must make a factual showing of
> inconsistent interests and must demonstrate that the
> attorney made a choice between possible alternative
> courses of action, such as eliciting (or failing to
> elicit) evidence that favors an interest in competition
> with that of the defendant. If [the attorney] did not
> make such a choice, the conflict remained hypothetical.

Ferrell v. Hall, 640 F.3d 1199, 1244 (11th Cir. 2011) (citing

Buenoano, 74 F.3d at 1086 n.6) (quoting Smith, 815 F.2d at 1404

(internal citations and quotation marks omitted)).

On appeal from the denial of his postconviction motion, the

Florida Supreme Court denied the claim.

> Here, instead of identifying anything specific in the
> record suggesting that his interests were compromised by
> an actual conflict, Dennis alleges that trial counsel's
> "work load" related to his other clients, including
> clients involved in other high profile cases, adversely
> affected his representation. This allegation of a
> conflict is overly speculative and hypothetical. Dennis
> failed to allege that counsel actively represented
> conflicting interests, and we affirm the denial of
> relief.

Dennis v. State, 109 So.3d 680, 697 (Fla. 2012).  The Court does

not find this to be unreasonable.  Given that Mr. Dennis is unable

to show that his counsel failed to act based on a conflict and has

not shown the Florida Supreme Court's rejection of his

conflict-of-interest claim to be an unreasonable application of the

law or facts, he is not entitled to habeas relief.  Therefore,

habeas relief is denied.

### ii. Ineffective Assistance of Counsel

Mr. Dennis argues seven sub-claims in which he alleges that

his counsel was ineffective during the guilt phase of the trial. They are as follows: (1) counsel requested a continuance which violated his right to a speedy trial; (2) counsel failed to adequately prepare for trial; (3) counsel failed to object to improper bolstering by State witness; (4) counsel failed to object to an improper comment on the defendant's right to remain silent; (5) counsel failed to object to irrelevant and highly prejudicial evidence; (6) counsel failed to investigate other suspects; and (7) counsel failed to hire a crime scene expert. Mr. Dennis concludes by asserting "that the cumulative effects of these violations renders the result of Mr. Dennis' trial unreliable." DE 1 at 119.

First, the Court must note that all of these sub-claims were denied by the trial court, with the denial affirmed by the Florida Supreme Court because Mr. Dennis did not sufficiently allege prejudice. Dennis, 109 So.3d at 690-695. Based on the record, this determination is correct and that failure is likewise pervasive here.

It is more than troubling that counsel who is tasked with representing capital defendants during postconviction would assert seven sub-claims for ineffective assistance of counsel during the guilt phase and, not once, with the limited exception of the introductory paragraph, cite Strickland v. Washington, 466 U.S. 668 (1984). See DE 1 at 117-147. Here, counsel failed to acknowledge that the burden placed upon a petitioner asserting a Strickland

53

claim is to show deficiency <u>and</u> prejudice.[15] Indeed, the instant Petition shows that counsel lacks a fundamental understanding of what prejudice means and how it is shown.  It appears that counsel believes that if a deficiency is asserted that prejudice is presumed.

Further the Petition (DE 1) appears to suffer from a mistaken belief that if Mr. Dennis can show that trial counsel failed to do something, then the Court will find that there must have been something worthy to have been done.  For example, Mr. Dennis asserts that counsel failed to hire a crime scene expert.  Yet, postconviction counsel did not retain a crime scene expert in order to show what the expert would have said or done had that expert been retained by trial counsel.  The Court is not in a position to speculate or to assume what an expert who had never been retained might have said.  It is not as though simply showing that counsel failed to do something results in <u>per se</u> ineffectiveness. <u>Strickland</u> requires more.  In order to determine if Mr. Dennis was prejudiced, the Court must be able to evaluate what could have been said or done before it can say that there is a reasonable probability that the outcome of the trial would have been different.  Mr. Dennis's arguments assume that because something

---

[15]  At the federal habeas level, this burden is even greater because Mr. Dennis must also show that the Florida Supreme Court's determination was unreasonable.  A far higher standard than a <u>de novo</u> review of the claim.

was not done - had it been done - it would have made a difference. That is not always the case.  Suppose that trial counsel did hire a crime scene expert but the expert did not testify to a single thing which would have been helpful to Mr. Dennis.  Surely, counsel would not be ineffective for failing to put on an entirely irrelevant witness.  Of course, the Court has no way of knowing because Mr. Dennis has failed to even proffer what the testimony would have been.  Unfortunately, this claim is largely based purely on the speculation of counsel. Nonetheless, the Court takes each sub-claim in turn.

### a. Speedy Trial

Mr. Dennis contends that his attorney was ineffective during the guilt phase of his trial because he "sacrificed Mr. Dennis's right to a speedy trial when the lead detective had failed to timely turn over his report of the investigation."  DE 1 at 120. Further, Mr. Dennis asserts that his counsel should have objected to the trial court setting an early trial setting when it was clear that he would not be prepared for trial in such a short period of time. The Florida Supreme Court found the claim to be without merit.

> Dennis did not sufficiently allege either deficiency or prejudice. Specifically, given that Dennis did not allege that trial counsel could have been prepared for this capital trial involving two victims by the initial trial date or within the speedy trial period, Dennis did not sufficiently allege that trial counsel's decisions were outside the range of reasonable professional performance.

Moreover, Dennis did not include any allegations regarding how he was prejudiced by trial counsel's decisions. He vaguely implied that there was prejudice because a continuance was not charged to the State (and Dennis was not released) as a result of the State's failure to provide a copy of a police report that was not in existence during the speedy trial period. However, before a defendant may have a continuance charged to the State based upon a discovery violation, the defendant must demonstrate that the discovery violation prejudiced his ability to prepare for trial in a manner that could not be corrected within the speedy trial period. <u>State v. Guzman</u>, 697 So.2d 1263, 1264 (Fla. 3d DCA 1997). Here, Dennis did not allege that, but for the lack of access to this police report, Dennis could have been prepared for trial within the speedy trial period.

<u>Dennis</u>, 109 So.3d at 690. The Court does not find this determination to be unreasonable. This claim cannot be for simply a violation of the speedy trial rights that Mr. Dennis may have under state law because, if so, it would not be cognizable in a federal habeas proceeding. "A violation of Florida's speedy trial rules does not 'go to the fundamental fairness of the trial' so that it is cognizable in a § 2254 petition." <u>Davis v. Wainwright</u>, 547 F.2d 261, 264 (5th Cir. 1977). Rather, this claim must be one of ineffective assistance of counsel. Therefore, Mr. Dennis must show deficiency and prejudice. He has shown neither. This claim is particularly problematic in that the Florida Supreme Court found that Mr. Dennis did "not include any allegations regarding how he was prejudiced by trial counsel's decisions" in his state court pleadings. Yet, when he filed his claim here, he again failed to assert a single allegation of how he was prejudiced by counsel's

alleged deficiency.   In fact, the word prejudice does not appear anywhere in the text of this argument.   Failure to show prejudice assures  denial  of  this  claim.   Mr.  Dennis  has  not  alleged prejudice.   Habeas relief is denied.

### b. Failure to Adequately Prepare for Trial

Mr. Dennis's next claim is that his counsel was ineffective for not adequately preparing for trial. DE 1 at 120. Mr. Dennis's claim is widely speculative as to counsel's inadequate preparation and suggests that he must not have adequately prepared because he failed to seek the appointment of a second attorney to assist him and because counsel was also representing another capital defendant "as well as trying to earn a living running his practice." DE 1 at 121.   The only specific assertion regarding counsel's alleged inadequate preparation was that the State "brought to the [sic] Judge Platzer's attention the fact that Mr. Guralnick had taken only a small number of depositions of the witnesses in this case and that they planned on calling at least 60 witnesses in the State's case-in-chief." Id. at 122. However, Mr. Dennis fails to assert how this prejudiced him.   Mr. Dennis has not cited to any particular witness who testified and where his counsel was clearly unprepared to cross-examine the witness.   In other words, Mr. Dennis has failed to provide the Court with any basis for a prejudice analysis other than mere supposition.

Mr. Dennis raised this claim in his postconviction proceedings

in state court.   The Florida Supreme Court affirmed the denial
finding that the claim was insufficiently pled.

> Next, Dennis argues that trial counsel was ineffective
> for failing to secure a second chair and for representing
> other clients while representing Dennis. However, this
> claim is facially insufficient as Dennis failed to
> include any allegations regarding the prejudice prong of
> Strickland. Dennis generally claimed that trial counsel
> failed to adequately prepare for Dennis' trial. But he
> did not include any allegation that there is a reasonable
> probability that, but for trial counsel's failure to
> secure a second chair and his failure to represent only
> Dennis, the result of Dennis' trial would have been
> different or that confidence in the outcome is
> undermined. See Ragsdale, 720 So.2d at 208 (finding that
> trial judge properly denied evidentiary hearing where
> defendant provided insufficient facts as to "how the
> outcome would have been different had counsel acted
> otherwise"). Moreover, the record reflects that it was
> Dennis' desire that Guralnick be his sole attorney at
> both phases of the trial. And counsel is not ineffective
> for following his client's wishes. See Cole v. State, 841
> So.2d 409, 426 (Fla. 2003) (holding that counsel is not
> ineffective for following his client's wish to not call
> his mother to testify).

Dennis, 109 So.3d at 691.  Given the clear insufficiency of Mr.
Dennis's claim in his pleadings before this Court, the Court cannot
find the Florida Supreme Court's determination to be unreasonable.
Habeas relief is denied.

   c. *Failure to Object to Improper Bolstering by State Witnesses*

   Mr. Dennis's third sub-claim is that his counsel was
ineffective for failing "to object, and do so adequately when
called for."  DE 1 at 123.  Mr. Dennis identifies four witnesses
whose testimony was bolstered by the State and should have been
objected to during the guilt phase.  Mr. Dennis asserted this claim

58

in his postconviction motion and subsequent appeal to the Florida Supreme Court.  The Florida Supreme Court determined that this claim was insufficiently plead, refuted by the record, or procedurally barred.

> First, this claim is facially insufficient because Dennis' postconviction motion did not allege prejudice. See Lott v. State, 931 So.2d 807, 816 (Fla. 2006) ("'[W]e have repeatedly held that 'conclusory allegations are insufficient to warrant relief' on an ineffective assistance claim.") (quoting Wright v. State, 857 So.2d 861, 877 (Fla. 2003)).

Dennis, 109 So.3d at 692.

The Court finds the Florida Supreme Court's determination regarding the insufficiency of his pleadings to be reasonable. Here, Mr. Dennis did not argue that he was prejudiced.  This is fatal to his claim.  See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); accord Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." (citation omitted)).

It appears as though Mr. Dennis does not think that he must prove the second prong of Strickland because he failed to make the most cursory of arguments that he was prejudiced by counsel's deficiencies.  In truth, Mr. Dennis does not reference prejudice anywhere in the text of this claim.  Instead, Mr. Dennis attempted

59

to assert this claim by making such simplistic and conclusory arguments as "[t]rial counsel's failure to object, and do so adequately when called for, made him ineffective"; "trial counsel's failure to object to this testimony rendered him ineffective"; "trial counsel was ineffective for failing to object to this testimony"; and "[t]rial counsel's failure to object, and do so adequately when called for, made him ineffective."  DE 1 at 122-29.

Mr. Dennis also asserts that there is nothing "in the record to suggest that trial counsel did not object because he thought there was no valid objection."  Id. at 126.  Obviously, this is a specious argument.  The best evidence in the record that trial counsel did not object because he thought there was no valid objection was the fact that he did not object. "'We presume counsel was effective and conduct the Strickland analysis in a 'highly deferential' manner, 'considering all the circumstances . . . from counsel's perspective at the time,' Strickland, 466 U.S. at 689." Dell v. U.S. 710 F.3d 1267, 1273 (11th Cir. 2013).

Putting aside the lack of merit to Mr. Dennis's bald assertions regarding his counsel's ineffectiveness, it is clear that he continues to suffer from a fundamental misunderstanding of the Strickland two-prong test which is required to establish ineffective assistance of counsel.  If his assertions here are true, Mr. Dennis has merely shown that counsel was deficient, not ineffective.  Counsel would not be ineffective unless Mr. Dennis

was prejudiced by counsel's deficiencies, and Mr. Dennis has not

alleged that he was prejudiced.  The Court cannot and does not make

arguments that were omitted by the parties.

> Of course, all of these principles of law would
> mean nothing if district courts were required to
> mine the record, prospecting for facts that the
> habeas petitioner overlooked and could have, but
> did not, bring to the surface in his petition.
> Making district courts dig through volumes of
> documents and transcripts would shift the burden of
> sifting from petitioners to the courts. With a
> typically heavy caseload and always limited
> resources, a district court cannot be expected to
> do a petitioner's work for him. Cf. Adler v. Duval
> Cnty. Sch. Bd., 112 F.3d 1475, 1481 n.12 (11th Cir.
> 1997) (noting in a civil case that, absent plain
> error, "it is not our place as an appellate court
> to second guess the litigants before us and grant
> them relief ... based on facts they did not
> relate."); Johnson v. City of Fort Lauderdale, 126
> F.3d 1372, 1373 (11th Cir. 1997) ("[W]e are not
> obligated to cull the record ourselves in search of
> facts not included in the statements of fact.").
> The Seventh Circuit memorably said that appellate
> judges "are not like pigs, hunting for truffles
> buried in briefs." United States v. Dunkel, 927
> F.2d 955, 956 (7th Cir. 1991). Likewise, district
> court judges are not required to ferret out
> delectable facts buried in a massive record, like
> the one in this case, which was more than 25,000
> pages of documents and transcripts.

Chavez v. Sec'y, Dep't of Corr., 647 F.3d 1057, 1061 (11th Cir.

2011).  Habeas relief is denied.

   d. *Improper Comment on the Defendant's Right to Remain Silent*

    Mr. Dennis's fourth sub-claim for federal habeas relief is

that his counsel was ineffective for failing to object when the

State commented on his right to remain silent.  DE 1 at 129.  Mr.

Dennis raised this claim during postconviction and the Florida

Supreme Court found it to be without merit.

> During cross-examination, trial counsel elicited testimony from Romagni tending to indicate that Dennis was completely cooperative with police. On redirect, the State attempted to demonstrate that Dennis was not entirely cooperative. Therefore, Romagni's testimony regarding his inability to interview Dennis for a second time was relevant to Dennis' lack of complete cooperation with police. Accordingly, trial counsel was not ineffective for failing to raise what would have been a meritless objection. See Melendez v. State, 612 So.2d 1366, 1369 (Fla. 1992), receded from on other grounds by Deren v. State, 985 So.2d 1087, 1088 (Fla. 2008).

Dennis, 109 So.3d at 694. Here, the state court made its determination on the deficiency prong by analyzing an issue of state law (i.e., whether or not counsel essentially opened the door for the State to ask the questions which elicited the testimony at issue). However, the Court need not engage in an analysis of the admissibility or inadmissibility of evidence in state court because Mr. Dennis has not shown prejudice. The Court does not expound on the deficiency prong because the claim is resolved on the prejudice prong. See Hall v. Head, 310 F.3d 683, 699 (11th Cir. 2002) ("[A]lthough there is evidence in the record to support the district court's finding of deficient performance, we need not and do not 'reach the performance prong of the ineffective assistance test [because we are] convinced that the prejudice prong cannot be satisfied.'"). Indeed, just as he failed to do in all his sub-claims, here, Mr. Dennis also does not claim that he was prejudiced. As prejudice is essential to any ineffective assistance of counsel claim, this claim is insufficiently pled.

"Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face, see 28 U.S.C. § 2254 Rule 4." McFarland v. Scott, 512 U.S. 849 (1994); see also Spillers v. Lockhart, 802 F.2d 1007, 1010 (8th Cir. 1986) (holding that it is proper to dismiss a petitioner's claims that do not provide "any specifics to identify precisely how his counsel failed to fulfill those obligations").  Habeas relief is denied.

*e. Irrelevant and Highly Prejudicial Evidence Admitted Without Objection.*

Mr. Dennis's fifth sub-claim for federal habeas relief is that his counsel was ineffective for failing to object when irrelevant and highly prejudicial evidence was admitted.  Specifically, Mr. Dennis asserts that counsel should have objected when the State admitted into evidence a sexual assault kit, when a detective gave improper testimony on the ultimate issue of guilt, when the State elicited testimony regarding other guns owned by the defendant, and when the State elicited testimony regarding a cloned cell phone in possession of the defendant.  DE 1 at 136.

These claims were made during postconviction, and the denial was affirmed by the Florida Supreme Court.

> Like the above guilt phase claims of ineffectiveness, this claim is facially insufficient because Dennis' postconviction motion did not allege prejudice. He did not explain how there is a reasonable probability that the outcome would have been different had trial counsel objected to this testimony. He did not explain how the confidence in the outcome of the trial is undermined.

With regard to Watisha Wallace's allegedly irrelevant and prejudicial testimony that she and Dennis purchased a gun in her name for Dennis, the record refutes that there was any prejudice. On cross-examination, trial counsel elicited testimony from Wallace explaining that the gun was later transferred into Dennis' name. Moreover, during closing argument, trial counsel argued that Dennis would not have needed to borrow the shotgun used in the crimes since Dennis owned a gun.

Additionally, Dennis' subclaim that trial counsel was ineffective for not objecting to the cloned cell phone testimony is without merit. While the testimony implied that Dennis had illegally used a cloned cell phone, the record demonstrates that this testimony was relevant to the State's case. The State's case included presenting evidence that Dennis made a call to a friend and, during that call, he admitted information about the murders that was not generally available. Moreover, the State's case included evidence that Dennis had made particular phone calls to Stewart from his cell phone. Thus, this cell phone testimony was admissible. See Bryan v. State, 533 So.2d 744, 747 (Fla. 1988) (evidence that defendant committed robbery using the murder weapon admissible to demonstrate that defendant possessed the murder weapon). And counsel cannot be ineffective for failing to raise a meritless objection.

Furthermore, most of Dennis' subclaim regarding Detective Poitier's testimony was addressed on direct appeal and is therefore procedurally barred. See Jones v. State, 949 So.2d 1021, 1033 (Fla. 2006) ("Jones' allegation of ineffective assistance of counsel is merely a variant of the issues raised on direct appeal and is therefore procedurally barred."). During his direct appeal, Dennis argued that the State was permitted to elicit, over a defense hearsay objection, Poitier's testimony that he had concluded Dennis committed the crimes because of his history of domestic abuse of the victim and because of Dennis' interview with Romagni. Dennis, 817 So.2d at 753-54. He argued that this constituted inadmissible hearsay and an impermissible opinion as to Dennis' guilt. Id. at 754. This Court held that Poitier's testimony

> regarding Romagni's interview and the domestic abuse history was harmless "as everything the detective referred to on redirect was testified in detail by other witnesses." Id. Moreover, this Court held that Poitier's testimony regarding Dennis' guilt did not reach the level of fundamental error. Id. The only thing not raised on direct appeal in regard to Poitier's testimony was Poitier's identification of the sexual assault kit. While the sexual assault kit was irrelevant to proving the State's case as Dennis was never accused of raping Lumpkins, it does demonstrate that the State conducted a thorough investigation, including investigating the possibility of a rape motive. And, as Dennis acknowledged in his postconviction motion, "[a]ccording to the defense, this was a case of negligent investigation." Thus, this testimony was relevant because Dennis challenged the completeness of the police investigation, and trial counsel cannot be rendered ineffective for failing to raise a meritless issue.

Dennis, 109 So.3d at 692-93. As was the case with Mr. Dennis's prior sub-claims this sub-claim was also insufficiently pled.[16] To establish prejudice under Strickland, Mr. Dennis "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. Here, Mr. Dennis offers no explanation as to how or why if this "irrelevant

---

[16] This sub-claim unlike those before it does contain the word "prejudicial". However, it is used only in a conclusory fashion while referring to evidence which was prejudicial; rather than arguing Mr. Dennis was prejudiced. See DE 1 at 134-36 ("This information was highly prejudicial"; "This answer was not only prejudicial but was also nonresponsive to the question asked"; and "Mr. Dennis should have been adequately represented against these improper and highly prejudicial pieces of testimony.").

and highly" prejudicial evidence had been objected to, that there is a reasonable probability that the outcome of his trial would have been different.  In other words, had this testimony not been admitted, he would not have been convicted of two counts of first degree murder, one count of burglary with assault or battery while armed, and one count of criminal mischief.  However, he has failed to show this to a probability sufficient to undermine the outcome of his trial.

Moreover, the Florida Supreme Court did not make an unreasonable application of clearly established federal law.  The court identified the applicable prejudice standard for ineffective assistance of counsel claims and found that Mr. Dennis had not met that standard for two principle reasons.  First, that the claim was insufficiently pled.  Second, that counsel's performance cannot be deemed deficient if the objection would have been meritless.  Neither of these two determinations were unreasonable.  Habeas relief is denied.

### f. Failure to Investigate Other Suspects

Mr. Dennis's sixth sub-claim for habeas relief is that his counsel was ineffective for failing to investigate other possible suspects.  Mr. Dennis asserts that "[d]espite having preliminary information regarding other boyfriends, and therefore other persons with a similar jealous motive, trial counsel failed to investigate the information."  DE 1 at 137.  Specifically, Mr. Dennis contends

66

that trial counsel did not properly investigate two persons who appeared in Ms. Lumpkins' diary.  Mr. Dennis argues that while counsel did argue to the jury that Ms. Lumpkins had other boyfriends with similar motives for the murder, he did not investigate or interview them; therefore, it appeared to the jury that this theory was simply speculation.  However, Mr. Dennis has once again failed to allege prejudice.  This failure did not go unnoticed by the Florida Supreme Court.

> Like Dennis' other ineffectiveness claims, this claim is facially insufficient. Dennis did not specifically allege what information an investigation would have revealed and what information could have been presented at trial. See Nelson v. State, 875 So.2d 579, 583 (Fla. 2004) ("Under the circumstances of this case, a defendant would be required to allege what testimony defense counsel could have elicited from witnesses and how defense counsel's failure to call, interview, or present the witnesses who would have so testified prejudiced the case."). He also did not allege that there is a reasonable probability that the outcome of the trial would have been different had counsel investigated Lumpkins' boyfriends and had counsel presented any evidence revealed by the investigation to the jury. He did not allege that the confidence in the outcome is undermined due to trial counsel's failure to investigate other suspects.
>
> Further, the record demonstrates that trial counsel did present the arguments that Dennis now contends were inadequately presented due to trial counsel's failure to investigate other suspects. During the guilt phase, trial counsel argued that Lumpkins had other boyfriends, that Dennis had not been bothered by these other boyfriends, and that these other boyfriends might have had a motive to kill her. Specifically, trial counsel raised this issue during open [sic] arguments and during the cross-examination of Romagni. Therefore, as the

> trial court's order pointed out when denying this
> claim, "since counsel did present this information,
> he was not ineffective for failing to do so."

_Dennis_, 109 So.3d at 694.   Similar to his prior sub-claims, Mr.
Dennis has not sufficiently argued prejudice.   The Florida Supreme
Court's determination was not unreasonable.   The _Strickland_
prejudice prong requires that a defendant "must show that there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
466 U.S. at 694.   This is the clearly established federal law that
was applied by the Florida Supreme Court.   Habeas relief is denied.

### g.   Failure to Hire a Crime Scene Expert

Mr. Dennis's final sub-claim is that counsel failed to hire a
crime scene expert.   DE 1 at 144.   Mr. Dennis asserts that "it was
imperative for trial counsel to obtain a crime scene expert, crime
scene reconstructionist and/or forensic pathologist to provide the
jury with the evidentiary support for [his] argument and to
challenge the unsupported assumptions of the State's case."   DE 1
at 147.   The Florida Supreme Court affirmed the denial of this
claim as follows:

> As the trial court explained in its order denying
> relief, Dennis "fail[ed] to allege what experts
> should have been hired, what these experts would
> have testified about and how this failure
> prejudiced the Defendant." See _Ragsdale_, 720 So.2d
> at 207 (explaining that conclusory allegations are
> insufficient to state a claim for postconviction
> relief). Instead, Dennis argued that evidence that
> this crime could not have been committed by one
> person and that the assailants would not have been

68

> able to leave the scene without some blood on their
> persons is the type of evidence that would have
> supported Dennis' defense that he did not commit
> the crime. However, on cross-examination of State
> witnesses, trial counsel elicited that the evidence
> did not establish the number of perpetrators and
> that whoever committed the crime may have gotten
> blood or other biological material on them. Thus,
> trial counsel, without hiring a crime scene expert,
> actually elicited the information Dennis'
> postconviction motion mentioned.

Dennis, 109 So.3d at 694-95. As detailed above, Mr. Dennis failed
to provide the Court with the crucial information that it needs to
make a prejudice analysis. Therefore, the Court finds the Florida
Supreme Court's determination that the claim was insufficiently
pled to be reasonable. In the absence of proffered testimony to
the contrary, the Florida Supreme Court's determination that trial
counsel elicited the information without retaining an expert was
reasonable. Not knowing what the expert would have said had he
been retained, there can be no showing of unreasonableness by the
court. Habeas relief is denied.

### F. Ineffective Assistance of Appellate Counsel

In his final claim for federal habeas relief, Mr. Dennis
asserts that his appellate counsel was ineffective on direct
appeal. He asserts three sub-claims. First, appellate counsel was
ineffective for failing to raise a claim of improper and
inflammatory testimony offered by the State. Second, appellate
counsel was ineffective for failing to raise fundamental error.
Third, failure to assert that the jury was tainted due to

misconduct by the State and the trial court.   DE 1 at 148-62.

Claims of ineffective assistance of appellate counsel are governed by the standard articulated in <u>Philmore v. McNeil</u>:

> In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." <u>Id.</u> at 1130-31. Rather, an effective attorney will weed out weaker arguments, even though they may have merit. <u>See id.</u> at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. <u>See id.</u> at 1132. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." <u>Id.</u>

575 F.3d 1251, 1264-65 (11th Cir. 2009).   For the reasons that follow, Mr. Dennis's three sub-claims of ineffective assistance of appellate counsel are denied.

### i. Improper and Inflammatory Testimony

Mr. Dennis first asserts that "[m]ultiple witnesses gave improper and inflammatory testimony during Mr. Dennis' trial." DE 1 at 150. Specifically, Mr. Dennis argues: (1) Detective Edward Hudak was allowed to testify regarding the reactions of the other players on the University of Miami football team upon hearing about the crime; (2) Robin Gore, Timwanika Lumpkins' aunt, testified that Mr. Dennis once came to the parking area of her apartment wearing a hooded black pullover and carrying a gun; and (3) Dr. Sam Gulino, the medical examiner, testified during the guilt phase that the blood smears on the door were consistent with Mr. Barnes being blinded before he died.   According to Mr. Dennis, defense counsel objected during this testimony, but appellate counsel failed to

raise this issue on direct appeal.  Mr. Dennis first raised the

issue in his petition for a writ of habeas corpus in state court.

The Florida Supreme Court denied the writ.  Assuming deficiency for

the sake of the analysis, the court found that Mr. Dennis had not

shown prejudice.

> Here, even if the admission of this testimony was
> erroneous, Dennis cannot demonstrate prejudice
> because any error was harmless. See id. ("If that
> error was harmless, the petitioner ... would not
> have been prejudiced." (quoting Jones, 794 So.2d at
> 584)). The State's blood pattern expert testified
> "that the pooling and smearing of blood near the
> front door of the apartment and other nearby
> patterns were consistent with Barnes struggling and
> flailing about." Dennis, 817 So.2d at 749.
> Furthermore, multiple witnesses testified that
> Dennis possessed a gun. In fact, Stewart testified
> that he had loaned Dennis a sawed-off shotgun, a
> gun that was consistent with having been used to
> inflict the victims' wounds. Stewart, who led the
> police to the gun, testified that the gun was
> damaged when Dennis returned it. And the State's
> expert "testified that the metal fragments
> recovered from Barnes' apartment conclusively
> matched the trigger guard of the recovered
> shotgun." Id. at 749. There was also testimony
> that, a month prior to the murders, Dennis visited
> a friend on the University of Miami campus and
> asked that friend where Barnes lived, explaining
> that "he wanted the information because he wanted
> to find out if [Barnes] was 'f---ing around with
> his baby's mother.'" Id. at 748. Therefore, we
> conclude beyond a reasonable doubt that the
> admission of the allegedly improper testimony to
> which trial counsel objected did not affect the
> jury's verdict.

Dennis, 109 So.3d at 701-02.  A review of the record supports the

determination of the Florida Supreme Court.  More evidence than

just the three witnesses complained of here was admitted at trial.

Those additional witnesses' testimony was duplicative of other witnesses who testified. Moreover, Mr. Dennis has not shown nor has he even alleged prejudice. The single reference to prejudice in this sub-claim is that "[t]he prejudice from [Dr. Gulino's] assumptions about the blood is compounded by the fact that he never was qualified as a blood expert." DE 1 at 152. Of course, this is insufficient to show prejudice.

Therefore, even if the Court disagreed with the Florida Supreme Court's determination, this claim would fail under a de novo review. Berghuis v. Thompkins, 560 U.S. 370 (2010)(courts can deny writs of habeas corpus under § 2254 by engaging in de novo review because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review). Habeas relief is denied.

### ii. Fundamental Error

Mr. Dennis's second sub-claim for federal habeas relief is that his appellate counsel failed to raise certain issues which were not preserved for appeal but did represent fundamental error. DE 1 at 152. Mr. Dennis's claim is based on the testimony of four people. First, Wayne Sibley, a Coral Gables Fire Rescue paramedic, testified that "there was so much blood smeared around the floor . . . the carpet was heavily saturated with blood and other types of tissue [and] it was probably the worst things I've seen in a long time." Id. at 153. Second, Detective Melgarejo, a crime scene

detective, testified that "one of the victim's skull was 'very mushy.'" Id. Third, Randy Shannon, Marlin Barnes's position coach at the University of Miami, "testified that he called Ray Lewis, another nationally-known sports celebrity, in Lakeland about the murder and had to talk to him for 20 minutes 'just to calm him down.'" Id. Fourth, Dr. Guilno testified "that the victim's injuries were 'very typical' of high speed motor vehicle crashes." Id. at 154. Finally, Detective Charles testified that "the blood near the front door was 'consistent with [when] a person's hands and arms are soaked in blood [and] flailing or moving . . . and striking a wall . . .'" Id. At trial, counsel did not object. Appellate counsel did not raise the issue on direct appeal.

Mr. Dennis raised this claim in his state petition for habeas corpus. The Florida Supreme Court found no fundamental error.

> The next portion of Dennis' ineffectiveness of appellate counsel claim relates to allegedly improper testimony that trial counsel did not object to, namely a paramedic's testimony that the crime scene was bloody, a detective's testimony that the skull of one of the victims was "mushy," Dr. Gulino's testimony that the victim's head injuries were consistent with being hit with the blunt side of the shotgun, and Coach Shannon's testimony that he called Ray Lewis in Lakeland the morning of the murders.FN7 If a claim "was not preserved at trial by objection, appellate counsel cannot be ineffective for failing to raise this claim on appeal unless the claim constituted fundamental error.' " Valle, 837 So.2d at 909. "Fundamental error is error that reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.' " Jones, 949 So.2d at 1037 (Fla. 2006) (quoting State

<u>v. Delva</u>, 575 So.2d 643, 644-45 (Fla. 1991)).

> FN7. Dennis' allegations regarding Dr. Rao's testimony, Detective Charles' testimony, and other portions of Dr. Gulino's testimony are simply variations of claims raised in his postconviction motion. "[C]laims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been raised on direct appeal or in a postconviction motion." <u>Rutherford</u>, 774 So.2d at 643.

> We conclude that this portion of Dennis' claim does not rise to the level of fundamental error. Several witnesses testified that the crime scene was bloody, including the States [sic] blood pattern expert. <u>See</u> <u>Dennis</u>, 817 So.2d at 749. Moreover, Dr. Gulino, the medical examiner, properly testified about the gruesome injuries to the victims head. <u>See</u> <u>id.</u> at 749-50. Furthermore, the trial court did not abuse its discretion in allowing Dr. Gulino to testify about the consistency between the wounds and the shotgun. <u>See</u> <u>Cox v. State</u>, 966 So.2d 337, 352-54 (Fla. 2007). Even if this had been an abuse of discretion, it would not be fundamental error because, as this Court explained on direct appeal, "the State introduced several composite pictures comparing the victims wounds with the shotgun that made it readily apparent that the victims were struck with such force that their skin retained what amounted to the shotgun's 'fingerprints.'" <u>Dennis</u>, 817 So.2d at 750.

<u>Dennis</u>, 109 So.3d at 702.   The Court does not find this determination to be unreasonable.   As this is a claim of ineffective assistance of appellate counsel, Mr. Dennis must show that his appellate counsel was deficient for not making this claim on direct appeal.[17]   However, in order for appellate counsel to have

---

[17] It goes without saying that <u>Strickland</u> also requires that Mr. Dennis prove prejudice.  As has been the case for the majority of his ineffective assistance of counsel claims, Mr.

asserted this claim, the admission of this testimony would have had to have been fundamental error because trial counsel failed to object at trial.  "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit."  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (quotation marks omitted).

Applying the facts here to the law in Florida at the time of Mr. Dennis's direct appeal, the Court does not conclude that the Florida Supreme Court's determination that appellate counsel was not ineffective was unreasonable.  According to Florida law, once trial counsel failed to object, appellate counsel could only assert this claim if he could show fundamental error.  In Florida, fundamental error is defined as "error which reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error."  State v. Wilson, 686 So.2d 569, 570 (Fla. 1996).  After finding Mr. Dennis could not show fundamental error, the state court concluded that appellate counsel was not ineffective for failing to raise a nonmeritorious claim.  Even if the Court were to disagree with this conclusion, AEDPA demands more.  In order to find the state court's determination unreasonable under §2254(d)(1), "a habeas court must determine what arguments or theories supported or, as here, could have supported, the state

Dennis has failed to properly argue that he was prejudiced.

court's decision; and then it must ask whether it is possible
fairminded jurists could disagree that those arguments or theories
are inconsistent with the holding in a prior decision of [the
United States Supreme] Court." Harrington v. Richter, 562 U.S. 86,
102 (2011).  Applying the facts of this case to the standard in
Harrington, the Court cannot grant habeas relief. The record
reflects that the Florida Supreme Court's determination that there
was ample evidence apart from the witnesses complained of such that
Mr. Dennis had not shown fundamental error was reasonable and
supported by the facts.  Habeas relief is, therefore, denied.

### iii. Jury was Tainted due to Misconduct by the State of Florida and Trial Court

Mr. Dennis's final claim for habeas relief is that appellate
counsel failed to raise on direct appeal that there were
inappropriate interactions with jurors by both the prosecutor and
the judge.[18]  DE 1 at 155.  Specifically, Mr. Dennis asserts that
the trial court and the state attorney engaged in improper ex parte

---

[18]  Mr. Dennis also asserts a cumulative effects claim. DE 1
at 159-160.  A cumulative effects claim is not cognizable for
federal habeas review except in very limited circumstances not
applicable here.  When the Court engaged in a sub-claim by
sub-claim analysis and has found each to be without merit, unless
the trial was rendered fundamentally unfair, the Eleventh Circuit
Court of Appeals has declined to entertain "cumulative error"
claims. See Cargill v. Turpin, 120 F.3d 1366, 1386-87 (11th Cir.
1997).  The Florida Supreme Court has determined, and the Court
agrees, Mr. Dennis's trial was not rendered fundamentally unfair.
Further, as the Court has found no errors, there can be no
cumulative error.  See United States v. Waldon, 363 F.3d 1103
(11th Cir. 2004)(citing United States v. Allen, 269 F.3d 842, 847
(7th Cir. 2001)("If there are no errors or a single error, there
can be no cumulative error")).

communications with Jurors Reid and Thomas. Mr. Dennis also asserts that some impropriety must have occurred because one day the jurors requested that they be escorted to their cars individually as opposed to simply being escorted to the street. Finally, Mr. Dennis asserts that because the trial court made a statement that he would "speak to [the jury] like I did the last time" that the judge must have had prior ex parte communications with the jurors. The Florida Supreme Court found this claim speculative and meritless.

> Dennis has not pointed to anything in the record that indicates that potentially prejudicial juror misconduct occurred. See Morris v. State, 811 So.2d 661, 667 (Fla. 2002) ("[P]otentially harmful misconduct is presumptively prejudicial, but the defendant has the initial burden of establishing a prima facie case that the conduct is potentially prejudicial.") (quoting Amazon v. State, 487 So.2d 8, 11 (Fla. 1986)). Instead, Dennis' petition expresses hypothetical arguments about (1) what could have happened in addressing Juror Reids scheduling problem, (2) why the State may have asked whether Juror Thomas was fired, and (3) why jurors may have asked to be escorted to their cars. Such speculation would not provide a basis for this Court to conclude that the trial court abused its discretion in failing to adequately inquire about the alleged misconduct. Cf. Kelley v. State, 569 So.2d 754, 761-62 (Fla. 1990) (relinquishing jurisdiction for trial court to interview jurors based upon a specific report from attorneys that one juror informed the attorneys of certain misconduct on the part of another juror during trial). Therefore, such speculation does not provide this Court with a basis to conclude that fundamental error occurred.
>
> Next, Dennis asserts that judicial bias is evidenced by adverse rulings, an alleged ex parte communication with the jury, and a friendship with Dr. Rao. However, none of these allegations rises to the level of fundamental error. As this Court has explained, adverse trial court rulings do not generally provide a legally sufficient basis for disqualification. Waterhouse v. State, 792

So.2d 1176, 1194 (Fla. 2001). Additionally, when viewed
in context, it is clear that the record does not support
Dennis' claim that an ex parte conversation regarding the
jury instructions occurred. Furthermore, Dennis'
allegation regarding the judge's friendship with Dr. Rao
is based upon information disclosed at an evidentiary
hearing that took place during the first proceeding on
Dennis' postconviction motion. It is not based upon the
appellate record. See Rutherford, 774 So.2d at 646.

Accordingly, appellate counsel was not ineffective for
failing to present these alleged instances of fundamental
error, and Dennis is not entitled to relief.

Dennis, 109 So.3d at 702-03.  The Court agrees and finds this

determination to be reasonable.  Mr. Dennis has done little more

than take excerpts from the transcript and make assumptions

regarding what things may have been done or what statements may

have been made.  Mr. Dennis has offered no evidence of juror bias

or impropriety on the part of the assistant state attorney or the

trial judge.  Appellate counsel cannot be deemed ineffective for

failing to raise issues which have no support in the record and are

without merit.  United States v. Nyhuis, 211 F.3d 1340, 1344 (11th

Cir. 2000)("In order to do so, however, the claim of ineffective

assistance must have merit.").  Habeas relief is denied.

## V.   **CONCLUSION**

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** that Petitioner Labrant D. Dennis's

Petition for Writ of Habeas Corpus (DE 1) is **DENIED**.  All pending

motions are denied as moot.  A Certificate of Appealability is

**DENIED**.  The Court is not persuaded that Mr. Dennis has shown that

"jurists of reason could disagree with the district court's resolution of his constitutional claim or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003)(citation omitted).  The Clerk of the Court is instructed to **CLOSE** the case.

 **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida this ____3rd____ day of December, 2015.

WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record